

# NUMBER 13-13-00415-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**TEXAS COMMISSION ON
ENVIRONMENTAL QUALITY,**                                    **Appellant,**

**v.**

**TEXAS FARM BUREAU, FRANK VOLLEMAN,
FRANK DESTEFANO, DAVID AND MARY BALLEW,
RON AND SHERIE BURNETTE, SAM JONES,
THEODORE AND MARY KALLUS,
GLEN MARECEK, JOHN GAULDING,
AND CHARLES AND KATHERINE HARLESS,**          **Appellees.**

---

### On appeal from the 53rd District Court
### of Travis County, Texas.

---

# OPINION

### Before Justices Garza, Perkes, and Longoria
### Opinion by Justice Perkes[1]

---

[1] Pursuant to a docket-equalization order issued by the Supreme Court of Texas, the appeal has

This case involves the suspension of surface water rights along the Brazos River Basin. Appellant Texas Commission on Environmental Quality (TCEQ) appeals a summary judgment order in a suit for declaratory judgment rendered in favor of appellee Texas Farm Bureau.[2] By two issues, TCEQ argues the district court erred in holding that sections 36.1 through 36.8 of Title 30 of the Texas Administrative Code[3] are invalid because: (1) the district court misinterpreted the statute authorizing the creation of the agency rules; and (2) TCEQ has the general authority to protect the public health, safety, and welfare. We affirm.

## I. BACKGROUND

TCEQ is charged with administering and enforcing the water-rights regime in Texas. *See* TEX. WATER CODE ANN. § 5.013 (West, Westlaw through 2013 3d C.S.). One of the primary concepts of Texas water law is the doctrine of prior appropriation. Under the doctrine, the possessor of a more senior water right has priority over junior water right holders. *Id.* § 11.027. Appropriative rights are formally recognized in permits. *Id.* § 11.121. These permits include specific calendar dates, called priority dates, which establish the holder's place in the line of users. Id. § 11.141. The holder of the permit with the earliest date on a given stream is said to be the most senior, the

---

been transferred to this Court from the Third Court of Appeals in Austin, Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through 2013 3d C.S.).

[2] Also included as appellees are Frank Volleman, Frank Destefano, David and Mary Ballew, Ron and Sherie Burnette, Sam Jones, Theodore and Mary Kallus, Glen Marecek, John Gaulding, and Charles and Katherine Harless.

[3] These sections are referred to as the "Drought Rules." *See* 30 TEX. ADMIN. CODE ANN. §§ 36.1–36.9 (West, Westlaw through 2013 3d C.S.). It is the interplay between the Drought Rules and the Texas Water Code that is at the heart of this lawsuit.

holder of the permit with the next earliest date the next most senior, and so forth.    TCEQ's jurisdiction encompasses water rights including issuing new permits and exercising discretionary authority to enforce existing rights.    *Id.* § 5.013.

In 2011, the Texas Legislature enacted water code section 11.053, clarifying TCEQ's authority to administer water rights in times of drought or emergency shortage. *Id.* § 11.053.    Pursuant to this new statute and water code sections 5.013, 5.102 and 5.103, TCEQ adopted the "Drought Rules", which allow the agency in times of drought or emergency shortage to suspend certain water rights in order to allow a senior holder to obtain water.    *See* 30 TEX. ADMIN CODE § 36.3 (West, Westlaw through 40 Tex. Reg. No. 1152).    The Drought Rules, however, also include a provision that allows the executive director not to suspend certain junior rights—e.g., those held by cities and power generators—based on public health, safety, and welfare concerns. *See id.* § 36.5(c).

TCEQ adopted the Drought Rules in April 2012 and first applied them in the Brazos River Basin (the "Brazos") in late 2012 and early 2013.    In response to severe drought, Dow Chemical Company ("Dow"), which holds senior water rights in the lower Brazos near the Texas coast, notified TCEQ that it was making a "senior call" (also known as a "priority call") on water in the Brazos.    A senior call occurs when the holder of a senior water right demands that the holders of more junior water rights cease their use so that the senior holder may exercise its right.    In that regard, the senior holder asks TCEQ to take enforcement action against junior rights to protect the senior right.[4]

---

[4] In keeping with water rights jargon, senior water rights holders will frequently be referred to as "seniors" and junior water rights holders as "juniors."

3

In response to Dow's senior call, TCEQ's executive director issued a series of orders. The executive director suspended the use of water rights with a priority date junior to Dow's priority date. As permitted in Section 36.5(c) of the Drought Rules, however, TCEQ's executive director elected not to suspend the use of certain water rights designated for use as municipal water supplies or for electric power generation, based on public health, safety and welfare concerns.

TCEQ commissioners thereafter modified the executive director's order by requiring junior water rights holders who were not suspended to provide the following information to TCEQ within 14 days (30 days for the long-term plans): (1) reports on the non-suspended junior's daily water use (rates and amounts of water diversion, purpose and place of use); (2) information demonstrating that the non-suspended junior had made reasonable efforts to obtain alternate supplies; and (3) information on what the non-suspended junior had done to identify long-term additional or alternate water supplies.[5]

Texas Farm Bureau and two individual plaintiffs filed suit challenging the validity of TCEQ's Drought Rules and seeking a declaratory judgment under Section 2001.038 of the Texas Government Code.[6]   *See* TEX. GOV'T CODE ANN. § 2001.038 (West, Westlaw through 2013 3d C.S.). The district court, after hearing cross-motions for summary judgment, declared the Drought Rules invalid for the following two reasons:

(1) The rules exceed TCEQ's statutory authority because they allow exemption of preferred uses from curtailment or suspension order, and such exemptions are not in accordance with the priority of water rights established by Texas Water Code § 11.027; and

---

[5] The original order and all amendments expired when Dow rescinded its senior call.

[6] After the suit was filed, numerous other individuals joined as plaintiffs.

4

(2) Exemption of junior water rights from a priority call and curtailment or suspension order is not authorized by TCEQ's police power or any general authority to protect the public health, safety, or welfare.

## II.  STATUTORY CONSTRUCTION

By its first issue, TCEQ argues the district court erred in holding that the Drought Rules are invalid, and contends that the district court misinterpreted section 11.053 of the Texas Water Code.  Specifically, TCEQ asserts that:  (1) the district court failed to give proper deference to the agency's interpretation of the statute; (2) the district court's interpretation is unreasonable and renders section 11.053 meaningless; and (3) the legislative history supports TCEQ's statutory interpretation.

## A.  Standard of Review

We review the granting of a motion for summary judgment de novo.  *Merriman v. XTO Energy, Inc.,* 407 S.W.3d 244, 248 (Tex. 2013).  In moving for traditional summary judgment, a party must show there is no issue of material fact and it is entitled to judgment as a matter of law.  *See* TEX. RULE CIV. PROC. ANN. 166a(c) (West, Westlaw through 2013 3d C.S.).  When both parties move for summary judgment, the non-prevailing party may appeal both the grant of the prevailing party's motion as well as the denial of its own motion.  *See Holmes v. Morales*, 924 S.W.2d 920, 922 (Tex. 1996).  When the district court grants one party's motion and denies the other party's motion, the reviewing court should determine all questions presented and render the judgment that the court below should have rendered.  *Comm'rs Court v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997); *City of Fort Worth v. Cornyn*, 86 S.W.3d 320, 322 (Tex. App.—Austin 2002, no pet.).

In their cross-motions for summary judgment, the parties raised questions of law that must be determined through statutory construction. "We review questions of statutory construction de novo." *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011). Our fundamental objective in interpreting a statute is "to determine and give effect to the Legislature's intent." *Am. Zurich Ins. Co. v. Samudio*, 370 S.W.3d 363, 368 (Tex. 2012); *accord Molinet*, 356 S.W.3d at 411. In turn, "[t]he plain language of a statute is the surest guide to the Legislature's intent." *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 507 (Tex. 2012). "We take the Legislature at its word, and the truest measure of what it intended is what it enacted." *In re Office of Attorney Gen.*, 422 S.W.3d 623, 629 (Tex. 2013). "[U]nambiguous text equals determinative text," and "'[a]t this point, the judge's inquiry is at an end.'" *Id.* (quoting *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 652 (Tex. 2006)); *see In re Lee*, 411 S.W.3d 445, 450–451 (Tex. 2013).

It is inappropriate to resort to rules of construction or extra-textual information to construe a statute when its language is clear and unambiguous. *Id.* "This text-based approach requires us to study the language of the specific section at issue, as well as the statute as a whole." *Id.* When construing the statute as a whole, we are mindful that "[i]f a general provision conflicts with a special or local provision, the provisions shall be construed, if possible, so that effect is given to both." TEX. GOV'T CODE ANN. § 311.026(a) (West, Westlaw through 2013 3d C.S.). However, in the event that any such conflict is irreconcilable, the more specific provision will generally prevail. *Id.* § 311.026(b); *see also In re Allcat Claims Serv., L.P.*, 356 S.W.3d 455, 470–71 (Tex. 2011). Further, in the event of an irreconcilable conflict between two statutes, generally "the statute latest in

date of enactment prevails." TEX. GOV'T CODE ANN. § 311.025(a); *see Lee*, 411 S.W.3d at 450–451. Construction of a statute by an administrative agency charged with its enforcement is entitled to serious consideration, as long as the construction is reasonable and does not contradict the plain language of the statute. *Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex. 1993). This standard is applicable to both issues in this case, as each deals with statutory construction and interpretation.

## B.     Applicable Law

Section 11.053 of the Water Code reads as follows:

(a) During a period of drought or other emergency shortage of water, as defined by commission rule, the executive director by order may, in accordance with the priority of water rights established by Section 11.027:

(1) temporarily suspend the right of any person who holds a water right to use the water; and

(2) temporarily adjust the diversions of water by water rights holders.

(b) The executive director in ordering a suspension or adjustment under this Section shall ensure that an action taken:

(1) Maximizes the beneficial use of water;

(2) Minimizes the impact on water rights holders;

(3) Prevents the waste of water;

(4) Takes into consideration the efforts of the affected water rights holders to develop and implement the water conservation plans and drought contingency plans required by this chapter;

(5) To the greatest extent practicable, conforms to the order or preferences established by Section 11.024; and

(6) Does not require the release of water that, at the time the order is issued, is lawfully stored in a reservoir under water rights associated with that reservoir.

(c) The commission shall adopt rules to implement this Section, including rules:

(1) Defining drought or other emergency shortage of water for the purpose of this Section; and

(2) Specifying the:

    a. Conditions under which the executive director may issue an order under this Section;

    b. Terms of an order issued under this Section, including the maximum duration of a temporary suspension or adjustment under this Section; and

    c. Procedures for notice of, an opportunity for a hearing on, and the appeal to the commission of an order issued under this Section.

TEX. WATER CODE ANN. § 11.053. This section references two additional sections of the water code, 11.027 and 11.024. Section 11.027 states that "[a]s between appropriators, the first in time is the first in right", whereas section 11.024 prioritizes water users based on the nature of use. *Id.* § 11.027; see *id.* § 11.024.[7]

Pursuant to its authority under section 11.053(c), TCEQ adopted the Drought Rules, which contain the following clause: "The executive director may determine not to suspend a junior water right based on public health, safety, and welfare concerns. . . ." 30 TEX. ADMIN. CODE § 36.5(c). In this regard, we look to the statutory language to

---

[7] Section 11.024 states that "[i]n order to conserve and properly utilize state water, the public welfare requires not only recognition of beneficial uses but also a constructive public policy regarding the preferences between these uses.…" TEX. WATER CODE ANN. § 11.024 (West, Westlaw through 2013 3d C.S.).

8

determine whether section 11.053 allows TCEQ to deviate from the "first in time, first in right" principle of section 11.027.   *See* TEX. WATER CODE ANN. § 11.027.

## C.   Analysis

TCEQ contends section 11.053 is ambiguous and therefore the agency's statutory construction is entitled to deference.   The apparent ambiguity is between the language "shall ensure" in 11.053 (b) and "in accordance with" found in 11.053(a).   TCEQ reasons that it is impossible to ensure the 11.053(b) objectives are met if the agency must always follow the strict priority doctrine stated in 11.053(a).   TCEQ interprets section 11.053 as requiring the agency to consider the mandatory factors identified in 11.053(b) which may result in some departure from the strict application of time priority.

In support of its argument, TCEQ cites *Rail Road Commission of Texas v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619 (Tex. 2011).   In that case, Citizens sought judicial review of the Texas Railroad Commission's decision to grant a permit to a company to operate commercial injection wells for disposal of gas and waste. *Id.* at 622.   At issue was the Commission's definition of "public interest", which is not defined by statute.   *Id.* at 621.   The Texas Supreme Court held that the term "public interest" was "anything but clear and unambiguous" and further concluded that the agency's interpretation was reasonable and therefore entitled to deference.   *Id.* at 628.

Deference to an agency's interpretation is permissible, however, only if the meaning of the section or statute in question is not clear.   *Meno v. Kitchens*, 873 S.W.2d 789, 792 (Tex. App.—Austin 1994, writ denied); *see Moore*, 845 S.W.2d at 823; *Stanford v. Butler*, 181 S.W.2d 269, 273 (Tex. 1944).   Thus, to give weight to TCEQ's

9

interpretation of Section 11.053, we must first conclude that the statute is ambiguous. This we cannot do.

The meaning of the statutory language is clear. Section 11.053(b) states that the factors noted apply to suspensions or adjustments under this section. *See* TEX. WATER CODE ANN. § 11.053(b). The entire section of 11.053 must be accomplished in accordance with the priority of water rights established by section 11.027*. See id.* § 11.053(a). No specific language was included that would allow TCEQ to depart from the time priority of 11.027; rather, the statute expressly states the opposite. *See id.* The agency's interpretation would allow senior water rights holders to be suspended before their junior counterparts, which is inconsistent with the plain meaning of the statute. As such, we decline to defer to TCEQ's interpretation.[8] *See Citizens*, 336 S.W.3d at 622; *City of Plano v. Pub. Util. Comm'n*, 953 S.W.2d 416, 421 (Tex. App.—Austin 1997, no pet.).

In addition to arguing that we must defer to its interpretation, TCEQ argues that the district court's interpretation of section 11.053 is unreasonable because it renders the statute meaningless and incapable of execution. The district court concluded that the Drought Rules adopted under section 11.053(c) exceed the statutory authority because TCEQ must determine suspensions "in accordance with" the "first in time" principle found in section 11.027. *See* TEX. WATER CODE ANN. § 11.053(a).

---

[8] Since section 11.053 is unambiguous, there is no need to consider extra-textual information. *See In re Lee*, 411 S.W.3d 445, 450–51 (Tex. 2013).

TCEQ argues that the legal and practical effect of the district court's interpretation is that TCEQ has little more than the authority to enforce priorities. Instead, according to TCEQ, the purpose of section 11.053 is to allow the agency to consider the factors of 11.053(b) and "strike a balance" between enforcing priorities and exacerbating a situation in which there are public health, safety and welfare concerns. TCEQ asserts that section 11.053(b) requires the agency to base suspension orders on factors other than seniority and points to the fifth factor of 11.053(b) which states that the executive director shall ensure that any suspension or adjustment "to the greatest extent practicable, conforms to the order of preferences established by section 11.024."[9] According to TCEQ, because of this phrase, it is not practical to require the agency to comply with strict priority when applying section 11.053(b)(5). It asserts that if the agency must comply with strict time compliance, then a small community hospital would have its appropriation suspended or adjusted before a recreational fishing pond.

We are required, first and foremost, to follow the plain meaning of the statute. *See Crosstex Energy Serv., L.P. v. Pro Plus, Inc.,* 430 S.W.3d 384, 388 (Tex. 2014). The Legislature chose specific language in each subsection of 11.053. The qualifier "in accordance with" as it pertains to section 11.027 is not the same qualifier as "to the extent practicable" as it pertains to section 11.024. A plain reading of the statute indicates that the Legislature intended for the priority system established under section 11.027 to take precedence in any type of suspension or adjustment. The mere fact that a policy seems

---

[9] Section 11.024's hierarchy of preferences for appropriations are: (1) domestic and municipal purposes; (2) agricultural and industrial uses; (3) mining and mineral recovery; (4) hydroelectric power; (5) navigation; (6) recreation and pleasure; and (7) other beneficial uses. *See* TEX. WATER CODE ANN. § 11.024.

11

unwise or inconsistent with other policies does not justify a departure from the plain meaning of a legislative mandate. *Meno,* 873 S.W.2d at 792; *see R.R. Comm'n v. Miller,* 434 S.W.2d 670, 672 (Tex. 1968). Similarly, it is not the court's role to examine microscopically the Legislature's intent when interpreting a clear statutory command. *Meno*, 873 S.W.2d at 792.

TCEQ's argument further fails to consider the existing statutory scheme for dealing with emergency appropriations. Section 11.139 of the Water Code allows TCEQ to divert water to meet urgent public health and safety needs. *See* TEX. WATER CODE ANN. § 11.139. Section 11.139 gives the executive director the power to *grant* an emergency request for a diversion from a user. *See id.* While it may seem that the Drought Rules incorporate this authority, the rules give TCEQ the additional power to identify public health, safety, and welfare concerns and to divert water solely at the discretion of the executive director. Though section 11.139 is fundamentally different than section 11.053, it appears the Legislature did provide a mechanism for emergency appropriations based on urgent public health and safety concerns.

Additionally, TCEQ is not precluded from adopting rules that comply with both the 11.053(a) first in time principle and the 11.053(b) factors. As appellee notes, section 11.053(b) establishes guidelines for TCEQ's exercise of authority by requiring TCEQ to balance certain factors when ordering a suspension or adjustment. To the extent TCEQ argues that it must strike a balance between the 11.053(b) factors and 11.027 priorities, we disagree. As we previously noted, the plain language of 11.053(a) states otherwise. We conclude the district court correctly found that section 11.053(a) requires TCEQ to

12

apply the section 11.053(b) factors within the framework of "first in time, first in right." *See In re Lee*, 411 S.W.3d at 450–451. We overrule TCEQ's first issue.

### III. AGENCY AUTHORITY[10]

By its second issue, TCEQ complains that the district court erred in concluding that "[e]xemption of junior water rights from a priority call and curtailment or suspension order is not authorized by TCEQ's police power or any general authority to protect the public health, safety, or welfare." TCEQ asserts that the district court's conclusion runs counter to the policies and duties identified by the Legislature, the State Constitution, and the courts.

### A. Applicable Law

The powers of an agency include the powers delegated by the Legislature in clear and express statutory language, together with any implied powers that may be necessary to perform a function or duty delegated by the Legislature. *GTE Sw., Inc. v. Pub. Util. Comm'n*, 10 S.W.3d 7, 12 (Tex. App.—Austin 1999, no pet.). When the Legislature expressly confers a power on an agency, it also impliedly intends that the agency have whatever powers are reasonably necessary to fulfill its express functions or duties. *Pub. Util. Comm'n v. City Pub. Serv. Bd. of San Antonio*, 53 S.W.3d 310, 316 (Tex. 2001). An agency may not, however, exercise what is effectively a new power, or a power contradictory to the statute, on the theory that such a power is expedient for administrative purposes. *Id.* We defer to the agency's interpretation of its own powers only if that interpretation is reasonable and not inconsistent with the statute. *Id.; see Brazoria*

---

[10] TCEQ's second issue also concerns statutory construction; therefore, the standard of review is the same as the first issue.

13

*County v. Tex. Comm'n on Envtl. Quality*, 128 S.W.3d 728, 734 (Tex. App.—Austin 2004, no pet.); *Moore*, 845 S.W.2d at 823.

## B.    Analysis

As previously discussed, section 11.053 specifically makes all drought curtailment rulemaking or enforcement actions subject to the prior appropriation doctrine.   TCEQ identifies several statutory and one constitutional provision that purport to give TCEQ general power to act in the public interest.   *See* TEX. CONST. art. 16 § 59(a) (describing the conservation and development of natural resources as public rights and duties); TEX. WATER CODE ANN. §§ 11.134(b), 11.024, 12.014.

The cited water code sections, however, pertain to TCEQ's authority when acting on new water permits and authorizing new appropriations.   *See* TEX. WATER CODE ANN. §§ 11.134(b), 11.024, 12.014.   None of the statutes or the constitutional provision cited by TCEQ give the agency the general authority to suspend water rights after they have been issued.   TCEQ also identifies general policy declarations found in water code sections 5.013, 5.102, and 5.103.   *See* TEX. WATER CODE ANN. §§ 5.013, 5.102–.103. As Texas Farm Bureau notes, however, courts have consistently rejected appeals to statements of the general purpose of a statute as implicit declarations of broad authority when the Legislature has elsewhere expressly set forth the bounds of an agency's authority with specificity.   *See GTE Sw. Inc.,* 10 S.W.3d at 12.

We may not make such an inference unless these grants of regulatory authority will themselves be defeated absent an attendant authority to decide curtailments and suspensions based on public health, safety, and welfare concerns.   *See id.*   TCEQ has

14

made no such claim. While we recognize TCEQ's authority to manage and regulate the state's scarce water resources, such authority must not exceed its express legislative mandate. *See id.* We conclude that TCEQ's police power and general authority does not allow TCEQ to exempt junior preferred water rights from suspension based on public health, safety, and welfare concerns. Rather, section 11.053 specifically sets forth the limits of the agency's powers in times of drought. *See Pub. Util. Comm'n,* 53 S.W.3d at 316. Accordingly, we overrule TCEQ's second issue.

## IV.   CONCLUSION

We affirm the judgment of the district court.

GREGORY T. PERKES
JUSTICE

Publish
TEX. R. APP. P. 47.2(c)

Delivered and filed the
2nd day of April, 2015.

15