Ex Parte Thomas Johnson ROSSER.

No. 14–95–00185–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

May 11, 1995.

Rehearing Overruled June 15, 1995.

Herbert N. Lackshin, Houston, for appellant.

Stewart W. Gagnon, Reginald Hirsch, Dennis B. Kelly, Houston, for appellees.

Before LEE, AMIDEI and EDELMAN, JJ.

## OPINION

EDELMAN, Justice.

Thomas Johnson Rosser, relator, challenges an order for contempt and capias for his arrest on the grounds that: (1) he was unable to comply with the underlying visitation order because his daughter refused to visit her mother; (2) relator was required to pay various attorneys fees, ad litem fees and other costs to purge the contempt order; (3) the trial court failed to prepare a report of its findings; and (4) the contempt order is vague in requiring, as a condition to purge it, that relator assure that certain counseling sessions occur. We grant the petition for writ of habeas corpus.

Relator and the Real Party in Interest, Nancy Rosser ("Nancy"), were divorced in 1989. Nancy was initially awarded primary possession of their then minor children, Diana Rosser ("Diana") and Julie Rosser ("Julie").[1] However, in 1992, at relator's request, agreed temporary orders were entered whereby relator was awarded primary possession of Julie.[2]

In June of 1994, Nancy was granted additional summer visitation (the "visitation order"). This included two periods in July and one in August during which Nancy planned travel on a Caribbean cruise, and to Tennessee and South Carolina. Relator was ordered to deliver Julie to specified locations to facilitate this visitation.

---

1. Diana reached the age of 18 and is, thus, no longer subject to these proceedings. Julie became 17 in July of 1994.

2. Relator and Julie have since lived in Oxford, Mississippi.

When neither of the July visitations occurred, Nancy filed a motion for contempt. A hearing was held on this motion on August 4, 1994. At this hearing, Julie gave various reasons, based on the strained relationship with her mother, that she had not gone on the cruise and was opposed to the summer visitation. As to *relator's* not complying with the visitation order, Julie said:

> I think that even if you force me to, you know, to physically drag me, I just don't believe my dad would do that. I just—I mean, he couldn't do it. He can't drag me to do anything. He made it very clear that there would be consequences if I didn't go and I think that shows how persistent I am and not just someone who will force me to visit my mother and to have a relationship with my mother.

As to whether relator could have, but didn't, get her to comply with the order, Julie stated:

> That's not true. He couldn't. He told me I had to go. He said that he would drag me into the car and I said that I would go run away to a friend's if he forced me to go visit her.

> \*    \*    \*    \*    \*    \*

> I just don't see how he can be held in contempt of Court when he's done everything that he possibly [sic] could to—I mean, if you want to hold me in contempt of Court. I am the one that said I did not want to go. It wasn't my father....

Julie also said that from the beginning, relator had told her that she needed a relationship with her mother and that it was important.

Following this hearing,[3] the August visitation also did not take place. In September of 1994, Nancy Rosser filed an amended motion for contempt with regard to that visitation.

On December 1, 1994, a hearing was held on the September contempt motion. There,

relator admitted that he did not deliver Julie for the August visitation. However, he testified that after the contempt hearing on August 4, he told Julie that the court had ordered her to visit her mother and that he could be held in contempt if she refused. Julie replied that she was sorry about the contempt but that "she still was not going to go." Relator testified that he never did anything to discourage Julie from visiting; rather, he encouraged it. Relator further testified that Julie was "adamant" and told him she was not going and he could not make her. Relator continued to talk with Julie and encourage her to visit her mother. He also took her car away and "grounded" her for a week because she refused to visit.

On January 9, 1995, the trial court signed a contempt order based on various violations,[4] including the August visitation (the "contempt order"). It found that relator had the ability to comply with the August visitation, but failed to do so, and ordered that he be confined in jail for ten days beginning February 2, 1995, and that he thereafter remain in jail until he purged the contempt by: (1) paying "a part of" Nancy's previous attorneys fees of $5,295.00; (2) paying "a part of" Nancy's court costs of $95.00; (3) paying Nancy's costs of $8,139.56; (4) paying "a part of" previous ad litem fees of $3,385.00; (5) paying substitute ad litem fees totaling $5,727.00; and (7) assuring that the previously ordered counseling sessions between Julie, Nancy and himself had occurred. The contempt order further stated that relator's jail commitment would be suspended upon these same seven conditions, except that the payments were to be made by January 15, 1995. Relator was ordered to appear on February 2, 1995 for compliance.

Relator failed to make any of the payments or appear on February 2, and on the following day, the trial court entered an order for

---

3. The record does not reflect whether a ruling was made at this hearing. However, on November 14, 1994, the trial court entered a contempt order that found that relator had violated the visitation order and fined him $45,000, subject to various purging conditions. That order is not challenged in this proceeding.

4. The portions of the contempt order pertaining to other violations and penalties are not challenged in this proceeding.

capias for his arrest.[5]

On February 16, 1995, relator filed a petition for writ of habeas corpus with this court. At that time, he had not been taken into custody.[6] On February 21, 1995, we granted the writ and ordered relator released on bond pending final determination of the case by this court.

The original habeas corpus jurisdiction of this court is the same as that of the Texas Supreme Court. TEX. GOV'T CODE ANN. § 22.221 (Vernon Supp.1995). Therefore, in reviewing the record, we are without jurisdiction to determine whether the proof weighs for or against relator, but only whether the judgment is void because the relator was deprived of his liberty without due process of law. *Ex parte Chambers*, 898 S.W.2d 257, 259 (Tex.1995) (orig. proceeding); *Ex parte Helms*, 152 Tex. 480, 259 S.W.2d 184, 186 (1953) (orig. proceeding).

In his first and second complaints, relator contends that the contempt order is void because he was unable to comply with the visitation order, and because he took no action to prevent or discourage Nancy's visitation rights.

A contempt conviction for disobedience to a court order requires proof beyond a reasonable doubt of: (1) a reasonably specific order; (2) a violation of the order; (3) the willful intent to violate the order. *Chambers*, 898 S.W.2d at 259. Noncompliance with an unambiguous order of which one has notice will ordinarily raise an inference that the noncompliance was willful. *Id.* at 261.

However, the involuntary inability to comply with an order is a valid defense to contempt, for one's noncompliance cannot have been willful if the failure to comply was involuntary. *Id.* at 261. Although the inability to comply defense technically rebuts the willfulness element of contempt liability, the relator nevertheless bears the burden to conclusively establish his inability to comply. *Id.*

In *Ex parte Morgan*, 886 S.W.2d 829 (Tex. App.—Amarillo 1994, orig. proceeding), the Amarillo Court of Appeals ruled that a parent could not be held in contempt where she passively failed to insist that her children visit their father, but did not seek to impede the visitation or encourage the children to resist it.

In this case, it is undisputed that the terms of the visitation order were clear and specific, and that those terms were not complied with. Thus, the issue is whether relator conclusively established his involuntary inability to comply with it. *Chambers*, 898 S.W.2d at 261.

All of the evidence in the record indicates that relator encouraged the visitation and did what he could to convince his seventeen-year-old daughter to see her mother. The testimony from the hearings on August 4 and December 1 shows that Julie steadfastly refused to go and threatened to run away if she was forced to visit her mother. Neither being punished herself nor having her father found in contempt dissuaded her. There is no evidence in the record that relator overtly or covertly sought to impede or discourage the visitation.

Nancy, however, argues that relator was ordered to "deliver" the child, which required him to take overt action to comply. She complains that relator failed to do so, and that his only justification was that the child did not want to go.[7]

---

5. The capias was issued for relator's failure to appear on February 2 to show compliance with the portion of the contempt order relating to the August violation.

6. Nancy has not disputed that a capias is a sufficient restraint of liberty to permit filing a petition for writ of habeas corpus. *See, e.g., Hensley v. Municipal Court*, 411 U.S. 345, 350, 93 S.Ct. 1571, 1575, 36 L.Ed.2d 294 (1973); *Ex parte Trillo*, 540 S.W.2d 728, 731 (Tex.Crim.App. 1976); *Ex parte Williams*, 690 S.W.2d 243, 244 (Tex.1985); *Ex parte Duncan*, 796 S.W.2d 562, 564 (Tex.App.—Houston [1st Dist.] 1990, orig. proceeding).

7. This dispute, of course, raises serious policy and practical considerations. On the one hand, the policy of this State is to encourage a close and continuing relationship between a child and *each* parent by frequent periods of possession. TEX.FAM.CODE ANN. § 14.032(a) (Vernon Supp. 1995). That policy can be achieved only to the extent the courts have effective means to enforce

■ Within the spectrum of visitation disputes, there may be instances in which: (1) a parent actively discourages or impedes visitation; (2) a parent passively fails to insist that a child comply with visitation; or (3) a parent is legitimately unable to compel a child to comply with visitation. We believe that the defense of involuntary inability to comply applies only to the third alternative, and not the first two.[8]

■ As a practical matter, a trial court might be presented with evidence like that in this case in *any* of the three situations above. If such evidence must always be taken at face value to negate contempt, the ability of the courts to enforce visitation could be weakened considerably. The safeguards to prevent that result are that the relator has the burden to conclusively prove involuntary inability,[9] and that the trial court is allowed to judge the credibility of the witnesses and the weight to be given their testimony. *Ex parte Hightower*, 877 S.W.2d 17, 20 (Tex. App.—Dallas 1994, writ dism'd w.o.j.); *Ex parte Karr*, 663 S.W.2d 534, 538 (Tex.App.—Amarillo 1983, no writ).

■ As trier of fact, a trial court is not bound by the testimony of an interested witness merely because it is uncontradicted. Instead, testimony by an interested witness may establish a fact as a matter of law only if the testimony could readily be contradicted if untrue, and is clear, direct and positive, and there are no circumstances tending to discredit or impeach it. *Lofton v. Texas Brine Corp.*, 777 S.W.2d 384, 386 (Tex.1989). An appeals court may not substitute its judgment for that of the trial court as trier of fact. *Id.* at 387.

In this case, relator had the burden to prove his involuntary inability to comply with the visitation order. His and Julie's testimony were to the effect that he tried to persuade her to visit her mother, but because she refused, he was unable to do so.

■ However, relator and Julie were interested witnesses, and their testimony could not readily be contradicted if untrue. Thus, the trial court was not bound by this testimony if it disbelieved it, and we may not substitute our judgment for that of the trial court on that determination. The contempt order stated that relator had the ability to comply with the visitation order, and, by implication, that he had not conclusively established his involuntary inability to comply. Therefore, as to relator's first and second complaints, the order did not deprive relator of his liberty without due process of law.

In his third and fourth complaints, relator contends that the contempt order is void because it requires him to pay various attorneys fees, costs, and ad litem fees as a condition of purging himself of the jail sentence.[10]

■ The Texas Constitution prohibits imprisoning a person for debt. TEX.CONST. art. I, § 18. An exception to this rule applies to payment of spousal or child support and attorneys fees against the party in default thereon, which is enforceable by contempt. *Ex parte Hall*, 854 S.W.2d 656, 658 (Tex. 1993); *Ex parte Rogers*, 633 S.W.2d 666, 670 (Tex.App.—Amarillo 1982, orig. proceeding). However, this exception does not extend to payment of costs and attorneys fees to purge a contempt judgment for violation of a visitation order. *Karr*, 663 S.W.2d at 538. Accordingly, the portions of the contempt order which order confinement for violation of the August visitation, and which allow purging or suspension of the confinement by payment of costs and fees, constitute a prohibited imprisonment for debt, and are void. Relator's third and fourth complaints are sustained.

---

visitation, such as by contempt. On the other hand, to hold a parent in contempt for his child's unwillingness to comply with visitation would suggest that the parent must either forcibly compel the child to comply, or simply be held accountable for the child's refusal to do so.

**8.** To the extent that the decision in *Morgan* was based on involuntary inability to comply, we differ with it as to the second alternative above.

**9.** *Chambers,* 898 S.W.2d at 261.

**10.** Nancy Rosser did not respond to these contentions in her reply brief to relator's petition for writ of habeas corpus.

■ Relator's fifth complaint is that the contempt order is void because the associate judge failed to file a report of his findings as required by TEX.GOV'T CODE ANN. § 54.010 (Vernon 1988).[11] However, the authorities cited by relator do not lead us to this conclusion. Relator's fifth contention is overruled.

Relator lastly complains that the January 9 contempt order is void because the purging condition that he "assure" that certain counseling sessions with Nancy and Julie had occurred is vague and ambiguous.[12]

■ The failure of an order of contempt to specify in clear and unambiguous language that which the contemnor is required to do to purge himself and escape the restraint on his liberty invalidates the order. *Ex parte Garcia*, 831 S.W.2d 1, 2 (Tex.App.—El Paso 1992, orig. proceeding); *Ex parte Bagwell*, 754 S.W.2d 490, 492–93 (Tex.App.—Houston [14th Dist.] 1988, orig. proceeding).

■ Here, the purging condition does not specify how the assurance was to be given. More importantly, however, it can be read to require that relator assure the participation of Nancy and/or Julie in the counseling sessions, which he might not be able to do. Because the order fails to clearly set out the action relator must take to provide the necessary assurance, we hold that this purging condition of the contempt order is also void. Relator's sixth contention is sustained.

■ Based on the foregoing, we grant the petition for writ of habeas corpus, and order relator discharged from the capias.[13] In reaching this determination, however, we express no opinion on other portions of the contempt order, nor impose any restraint upon the trial court to re-issue it in accordance with this opinion and applicable law.

---

**11.** Relator also cites *Stein v. Stein*, 868 S.W.2d 902 (Tex.App.—Houston [14th Dist.] 1994, no writ) and *Murray v. Murray*, 350 S.W.2d 593 (Tex.Civ.App.—Dallas 1961, no writ) in support of this proposition.

**12.** This condition was in addition to the payment of costs, attorneys fees, and ad litem fees.

**13.** Since the capias was issued to enforce the portion of the contempt order which has been found void, the capias is also thereby rendered void. *See, e.g., Ex parte Coleman*, 864 S.W.2d 573, 576 (Tex.App.—Tyler 1993, orig. proceeding).