

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00349-CV

**IN RE** Venkateswar Rao **KODATI**

Original Mandamus Proceeding[1]

Opinion by:    Irene Rios, Justice

Sitting:        Karen Angelini, Justice
            Luz Elena D. Chapa, Justice
            Irene Rios, Justice

Delivered and Filed:  August 22, 2018

PETITION FOR WRIT OF MANDAMUS CONDITIONALLY GRANTED IN PART AND DENIED IN PART

In this original proceeding, relator asserts the trial court abused its discretion by finding him in contempt for violating temporary orders in a family law case and ordering him to pay the real party in interest's attorney's fees.  Respondent filed a response, to which relator replied.  The real party in interest elected to not file a response.  Because we conclude relator did not receive sufficient notice of the contempt accusations, we grant the requested relief on that issue.  We deny all other requested relief.

## BACKGROUND

Relator's and the real party in interest's ("Nagalatha") divorce case was heard on May 25, 2017.  The trial court signed the final divorce decree on September 10, 2017.  The decree appointed

---

[1] This proceeding arises out of Cause No. 2015-CI-02059, styled *In the Interest of M.P.K. and P.S.K., Children*, pending in the 73rd Judicial District Court, Bexar County, Texas, the Honorable Renée Yanta presiding.

the parents joint managing conservators of the couple's two children, with relator having the exclusive right to designate the children's residence, subject to a geographic restriction.

In his petition for writ of mandamus, relator complains of the trial court's "Order Vacating Prior Order and Orders on Clarification, Motion for Enforcement and for Contempt" (the "contempt order"). In its order, the trial court determined relator engaged in parental alienation that caused M.P.K.[2] to not engage in court-ordered periods of possession with Nagalatha. Based on this finding, the trial court ordered relator to pay Nagalatha $2,306.00 in attorney's fees associated with the prosecution of her motion to enforce. The contempt order also states as follows:

> During the hearing on February 16, 2018, the Court specifically ordered [relator] NOT to have [M.P.K.] brought to Court during the school day and ordered that [relator] not permit or allow [M.P.K.] to miss any school prior to arriving at the courthouse to be interviewed by the Court.
>
> Based on the Court's assessment of the credibility of the witnesses, including the testimony of [relator] offered attempting to excuse his conduct (which the Court rejects as unreliable), the Court further finds that [relator] purposely failed to comply with the Court's specific order and in fact, had [M.P.K.] arrive at the Courthouse well before school dismissed for the day.
>
> [Relator's] behavior was a direct violation of the Court's order. In light of such violation of the clear and unambiguous Court order, issued and rendered during the February 16, 2018, hearing and almost immediately violated during the hearing, the Court FINDS and ORDERS that [relator] is in contempt of Court and is ordered to pay a fine of $500.00.

In his petition, relator raises several complaints about the order. First, relator asserts the trial court's admonishment regarding M.P.K. being removed from school early was not a clear and unambiguous court order. Second, he asserts the finding that M.P.K. was removed from school prior to the end of the school day could not have occurred "in the presence of the court"; therefore, the contempt is constructive, and he was entitled to notice and a hearing. Third, relator asserts that

---

[2] The couple have two children, but the alleged violations involve only M.P.K., who is sixteen and one-half years old.

because the contempt was criminal in nature, the court's finding must be supported by proof beyond a reasonable doubt. Finally, relator asserts the evidence fails to show he did not comply with the order regarding possession and access; therefore, the trial court abused its discretion by ordering him to pay attorney's fees.

## AVAILABILITY OF MANDAMUS RELIEF

Ordinarily to obtain mandamus relief, a relator must show both that the trial court has clearly abused its discretion and that relator has no adequate appellate remedy. *In re Prudential Ins. Co.*, 148 S.W.3d 124, 135-36 (Tex. 2004) (orig. proceeding). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to analyze the law correctly or apply the law correctly to the facts. *In re Cerberus Capital Mgmt. L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam). Contempt orders that do not involve confinement are not appealable by habeas corpus; therefore, no adequate remedy by appeal exists. *In re Braden*, 483 S.W.3d 659, 662 (Tex. App.—Houston [14th Dist.] 2015, orig. proceeding) (per curiam). When, as here, the contempt order does not involve confinement, the only possible relief is a writ of mandamus. *In re Long*, 984 S.W.2d 623, 625 (Tex. 1999) (orig. proceeding) (per curiam on rehearing). Because relator does not have an adequate remedy by appeal, the only remaining question is whether he has shown the contempt order is unenforceable.

## VIOLATION OF CLEAR AND UNAMBIGUOUS ORDER

Relator first contends the trial court's verbal admonishment that M.P.K. not miss school was not clear and unambiguous. To be enforceable by contempt, a trial court's order must set out the terms for compliance in clear and unambiguous terms. *Ex parte Brister*, 801 S.W.2d 833, 834 (Tex. 1990) (orig. proceeding). The order must also clearly order the party to perform the required acts. *Id.* The order must be sufficiently specific such that the person charged with obeying the

order will readily know exactly what duties and obligations are imposed. *See Ex parte Chambers*, 898 S.W.2d 257, 260 (Tex. 1995) (orig. proceeding). If the court's order requires inferences or conclusions about whether particular conduct is encompassed by the order and concerning which reasonable persons might differ, the order is insufficient to support a contempt order. *Id.*

On the first day of the hearing (February 16, 2018), relator asked the trial court to speak with M.P.K. The court asked relator what time M.P.K. was released from school:

> Court: So my question is, I asked what time does the child get out of school. When does the bell ring when she's done with the school day?
>
> Relator: I think 3:15 or 3:30.
>
> Court: Let's say it's 3:30 when she gets in the car.
>
> Relator: Half an hour max.
>
> Court: I assume y'all have made those arrangements and we'll figure it out, okay. But at 3:00, I'm done with y'all. The only thing left for me to do will be to interview this little girl, if you still insist on me doing this.
>
> . . .
>
> Court: Well, I would love to talk to her. Whatever I decide she's going to hear straight from me. All right. So I'm hopeful that you have already made those arrangements. Okay. All right. So you'll have till 3:00.
>
> Relator's attorney: I don't think that it's — she simply needs to tell her to go get her. She's supposed to get out of school.
>
> Court: If this child misses a single minute of school, you are not going to like it.

The trial court specifically asked when M.P.K. got out of school and it could not have been clearer that M.P.K should not miss "a single minute of school." We conclude the court's admonishment that M.P.K. not leave school early is "reasonably specific" and was clearly violated because there appears to be no dispute that M.P.K. left school early to appear in court.

## CONSTRUCTIVE OR DIRECT CONTEMPT

Relator next contends the alleged contemptuous conduct was constructive because his sister was the person who removed M.P.K. from school early, while he was present in the courtroom the entire time and, therefore, physically incapable of causing M.P.K. to miss school. Therefore, according to relator, the alleged contempt—causing M.P.K. to miss school—occurred outside the trial court's presence. In her response to the petition for writ of mandamus, respondent asserts the contempt was direct because she issued the order that M.P.K. not be taken early from school, and relator himself told her the child was in the courtroom. Respondent, therefore, concludes she had direct knowledge of the facts that constitute contempt. Respondent also contends the contempt occurred in her presence, while court was in session, "and while [she] was administering justice with respect to the [best] interests of" M.P.K.

The Supreme Court of Texas has broadly defined contempt as "disobedience to or disrespect of a court by acting in opposition to its authority" and observed that contempt is "a broad and inherent power of a court." *In re Reece*, 341 S.W.3d 360, 364 (Tex. 2011) (orig. proceeding) (citations omitted). "Direct contempt is that type of disobedience or disrespect which occurs within the presence of the court, while constructive contempt occurs outside the court's presence." *Chambers*, 898 S.W.2d at 259.

In a case of direct contempt, the court may, in limited circumstances, conduct a summary proceeding without notice and a hearing. *Reece*, 341 S.W.3d at 365. The trial court's authority to summarily punish contemptuous conduct flows from observing the conduct and the exigency of the situation. *Id.* at 365, n.5; *Ex parte Knable*, 818 S.W.2d 811, 813 (Tex. Crim. App. 1991) (orig. proceeding); *In re Cisneros*, 487 S.W.3d 237, 242 (Tex. App.—El Paso 2015, orig. proceeding). If there are no exigent circumstances, the authority of the trial court to punish without notice and an opportunity to be heard also ceases to exist. *Knable*, 818 S.W.2d at 813; *Cisneros*, 487 S.W.3d

at 242. In a case of constructive contempt, the contemnor is entitled to procedural safeguards such as notice, a hearing, and the opportunity to obtain an attorney. *Reece*, 341 S.W.3d at 365.

Here, the record does not reflect the existence of any exigent circumstances sufficient to justify foregoing the requirements of due process. Therefore, we hold that, regardless of whether this case involves constructive or direct contempt, relator was entitled to notice and a reasonable opportunity to be heard.

## CIVIL OR CRIMINAL CONTEMPT

Although we need not determine whether this case involves direct or constructive contempt, we must determine whether the contempt is civil or criminal.

"Contempt is further classified into either civil or criminal contempt." *Reece*, 341 S.W.3d at 365. The distinction between civil and criminal contempt is based on the nature and purpose of the penalty imposed. Civil contempt is remedial and coercive in nature—the confinement is conditioned on obedience with the court's order. *Id.* Criminal contempt, on the other hand, is punitive in nature, and the court punishes the contemnor for a completed act or omission rather than ordering him confined to compel compliance with an existing order. *Id.* "A criminal contempt conviction for disobedience to a court order requires proof beyond a reasonable doubt of: (1) a reasonably specific order; (2) a violation of the order; and (3) the willful intent to violate the order." *Chambers*, 898 S.W.2d at 259.

We conclude this is criminal contempt because the trial court punished relator "for a completed act or omission rather than ordering him confined to compel compliance with an existing order." *Id.* In her response, respondent does not dispute that this amounts to criminal contempt. Therefore, the next issue is whether relator's due process rights to notice and a hearing were violated.

**DUE PROCESS**

As stated above, notice in the context of criminal contempt proceedings requires timely notice by personal service of the show cause hearing, and full and unambiguous notice of the contempt accusations. *Ex parte Vetterick*, 744 S.W.2d 598, 599 (Tex. 1988) (orig. proceeding) (per curiam); *In re Rowe*, 113 S.W.3d 749, 752 (Tex. App.—Austin 2003, orig. proceeding). Notice of the contempt allegations or accusations must state when, how, and by what means the person has been guilty of contempt and must be personally served on the alleged contemnor in a motion for contempt filed by an opposing party, a show cause order issued by the court, or equivalent legal process. *Vetterick*, 744 S.W.2d at 599.

Here, at the end of the first day of the hearing, M.P.K. left school early to appear in the courtroom. After expressing her displeasure and having an in-chambers meeting with counsel, the trial court stated on the record:

> [Relator], you are in direct contempt, and open direct contempt of my instruction[s] that were included in an order, but I don't know what the right consequence should be with that. I have never frankly ever had anybody but one person be so open in their definement [sic] of my court instructions. And honestly I am at a loss of what to do.
>
> . . . But at the very least I am suspending this hearing and we'll reconvene on the 5th [of March] and whatever issues crop up between then and now, unless they are emergency in character, we will pick up on the 5th. . . . .

The contempt proceedings were initiated by the trial court rather than by Nagalatha. Consequently, notice was required to be personally served on relator by a show cause order or equivalent legal process. *See id.* Additionally, the notice must be given a reasonable time before the hearing. *Cisneros*, 487 S.W.3d at 242. In the absence of constitutionally sufficient notice, a contempt order is void. *Rowe*, 113 S.W.3d at 752.

The trial court did not enter a show cause order requiring relator to appear and show cause why he should not be held in contempt. Instead, the court summarily held relator in contempt and

suspended the hearing to determine "the right consequence." As a result, we hold relator was not provided with constitutionally-sufficient notice. Therefore, relator is entitled to mandamus relief on this issue. We next address relator's complaint about the attorney's fees.

**ATTORNEY'S FEES**

The trial court found relator "engaged in parental alienation that has caused [M.P.K.] to not engage in court-ordered periods of possession [on February 2-4, 2018] with [Nagalatha]." The court ordered relator to pay Nagalatha "$2,306.00 in attorney's fees for the prosecution of [Nagalatha's] First Amended Motion for Enforcement." Relator asserts the evidence does not support such a finding.

Under the temporary orders, Nagalatha was entitled to possession and access on the first, third, and fifth Friday of every month from 6:00pm to 9:00pm on Friday, the following Saturday from 9:00am to 10:00pm, and the following Sunday from 9:00am to 6:00pm. There is no dispute that relator delivered M.P.K. to the Prue Road Substation on February 3 and 4, 2018, pursuant to the terms of the temporary orders. And, there is no dispute that M.P.K. did not want to go with her mother on February 3 and 4.[3] Relator testified he told M.P.K. she had to go to her mother on February 3 and 4. Relator also called witnesses who testified M.P.K. did not want to go with her mother on the visitation days.

San Antonio Police Officer Gibbs was present during the Sunday February 4 exchange. She testified M.P.K. said she did not want to go with her mother. Officer Gibbs said she did not observe anything that led her to conclude relator caused a violation of a court order; however, she also said she could not hear or see whether relator spoke to his daughter. Gibbs did not ask relator why M.P.K. did not want to go with her mother.

---

[3] Relator testified there were no issues with the Friday February 2 visitation. He alleged M.P.K. came back from the visit that evening and told him her mother had threatened to put her in handcuffs and in foster care.

Officer Hernandez was called to the precinct for the visitation violation on February 4. Hernandez said relator did not make any statements to him that indicated relator was trying to prevent M.P.K. from going with her mother, he had no reason to believe relator was trying to manipulate M.P.K., and it did not appear as if relator was coaching M.P.K. He said M.P.K. appeared "distraught, kind of crying, emotional."

A friend of the family, "Angelina," who was present at the exchanges on February 3 and 4, testified she saw no conversation between relator and M.P.K., and she had no reason to believe relator was encouraging M.P.K. to not go with her mother. She responded "yes" when asked, "From what you could see [on February 3], did [relator] do everything he could to encourage [M.P.K.] to go with her mother." On Sunday February 4, Angelina said relator "raised his voice" and told M.P.K. she had to go with her mother and there would be "consequences" if she did not. She had no reason to believe relator manipulated M.P.K. or tried to prevent her from having a relationship with her mother.

Kelly Bernstein, M.P.K.'s court-appointed counselor, testified her sessions with M.P.K. were "light hearted," positive, and "improvement is coming." But, after every session, she received an email from M.P.K. that twisted the facts of what actually occurred during the session. She described one email as "ugly and accusatory and [did] not at all reflect the progress that [she] thought [they] had made in [their] session." Bernstein believed the reunification counseling was being interfered with "by an outside individual." She believed the emails from M.P.K. "were heavily pressured" and some may have come from relator. In her opinion, this was "one of the most severe cases of parental alienation that [she had] seen in a long time." When asked if she talked about the emails with M.P.K., Bernstein explained

> . . . M.P.K. will become quiet. She will scrub. She will tilt her head to the side like she doesn't know. And she doesn't want to discuss it. And then if I press for a response and say, come on, this may not be pleasant, but this is something that we

really need to address, she might come to tears. She might appear as if she is building anger. She might tell me to ask her dad. She might tell me that she doesn't know. These are . . . all tell [tale] signs of how a child who is being affected by parental alienation handles a challenge to the alienating parent's behavior.

However, Bernstein admitted she had never observed relator say anything to M.P.K. that she considered parental alienation.

In his petition, relator argues that, even if Bernstein's opinion was correct, there is no testimony about the dates of the alleged alienation or that the alienation caused Nagalatha's inability to exercise her periods of possession. Relator also asserts he cannot be expected to physically force M.P.K. to go with her mother.

"Within the spectrum of visitation disputes, there may be instances in which: (1) a parent actively discourages or impedes visitation; (2) a parent passively fails to insist that a child comply with visitation; or (3) a parent is legitimately unable to compel a child to comply with visitation." *Ex parte Rosser*, 899 S.W.2d 382, 386 (Tex. App.—Houston [14th Dist.] 1995, orig. proceeding). The defense of involuntary inability to comply with a court order applies only to the third alternative, and not the first two. *Id.*

The relator has the burden to conclusively prove involuntary inability, and the trial court may judge the credibility of the witnesses and the weight to be given their testimony. *Id.* "As trier of fact, a trial court is not bound by the testimony of an interested witness merely because it is uncontradicted." *Id.* "Instead, testimony by an interested witness may establish a fact as a matter of law only if the testimony could readily be contradicted if untrue, and is clear, direct and positive, and there are no circumstances tending to discredit or impeach it." *Id.* "An appeals court may not substitute its judgment for that of the trial court as trier of fact." *Id.*

Here, as in *Rosser*, several witnesses testified about M.P.K.'s refusal to go with her mother. In *Rosser*, all the evidence indicated relator encouraged the visitation and did what he could to

convince his seventeen-year-old daughter to see her mother. The testimony from the hearings showed the daughter steadfastly refused to go and threatened to run away if she was forced to visit her mother. Neither being punished herself nor having her father found in contempt dissuaded her. There was no evidence relator overtly or covertly sought to impede or discourage the visitation. *Id.* at 385. However, the mother argued that relator was ordered to "deliver" the child, which required him to take overt action to comply. She complained relator failed to do so, and that his only justification was that the child did not want to go. *Id.* The *Rosser* court held relator and the daughter were interested witnesses and the trial court was not bound by their testimony. The court concluded, "[t]he contempt order stated that relator had the ability to comply with the visitation order, and, by implication, that he had not conclusively established his involuntary inability to comply." *Id.* at 386.

Here, relator had the burden to prove his involuntary inability to comply with the visitation order. His and his sister's testimony were that he never tried to manipulate M.P.K. and he tried to persuade her to visit her mother. But, relator and his sister were interested witnesses, and their testimony could not readily be contradicted if untrue. Thus, the trial court was not bound by this testimony if it disbelieved it, and we may not substitute our judgment for that of the trial court on that determination. Also, the trial court had before it Bernstein's opinion that relator was engaging in parental alienation and undisputed evidence that M.P.K. refused to go with her mother during the February period of possession. From this evidence, the trial court could infer relator did not conclusively establish his involuntary inability to comply and that parental alienation by relator was the reason M.P.K. did not want to go with her mother. Therefore, we conclude the trial court did not abuse its discretion by ordering relator to pay Nagalatha's attorney's fees.

**CONCLUSION**

For the reasons stated above, we conditionally grant the petition for writ of mandamus in part and direct the trial court to vacate that portion of the May 16, 2018 "Order Vacating Prior Order and Orders on Clarification, Motion for Enforcement and for Contempt" finding relator in contempt of court and ordering him to pay a fine of $500.00. The petition is denied in all other respects. The writ will issue only if the trial court does not comply with this opinion within fifteen days.

Irene Rios, Justice