**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-20-00114-CV**
_____

**IN RE MARTHA KOOMAR**

**Original Proceeding**
**County Court at Law No. 3 of Montgomery County, Texas**
**Trial Cause No. 10-02-01239-CV**

**MEMORANDUM OPINION**

In a mandamus petition, Martha Koomar (Mother) challenges a judgment for contempt in a suit affecting the parent-child relationship (SAPCR). An assigned judge sitting in the trial court found Mother committed three separate willful violations of the SAPCR order, assessed her punishment at 100 days of concurrent jail confinement for each violation, suspended the commitment and placed Mother on community supervision for eighteen months on condition that she comply with the SAPCR order, and ordered Mother to pay attorney's fees of $3,667.00 to be paid in monthly installments of $300.00. Mother argues the contempt order is void as to

1

each of the violations found by the trial court. Additionally, she argues the trial court could not award attorney's fees as child support and no evidence supports the award. We stayed the trial court's contempt order and obtained a response from the real party in interest, Kristopher Yerger (Father).

Mother and Father agree that mandamus provides the correct vehicle for this challenge because the contempt order, which only requires Mother to comply with the SAPCR, does not involve confinement. *See In re Long*, 984 S.W.2d 623, 625 (Tex. 1999) (orig. proceeding).

Any provision of a final SAPCR order may be enforced by contempt. *See* Tex. Fam. Code Ann. § 157.001(b). A motion for enforcement must, in ordinary and concise language, identify the provision of the order allegedly violated and sought to be enforced and state the manner of the alleged contemnor's noncompliance. *See id.* § 157.002(a)(1)-(2). A motion for enforcement of the terms and conditions of conservatorship or possession must include the date, place, and, if applicable, the time of each occasion of the respondent's failure to comply with the order. *See id.* § 157.002(c). Similarly, the acts or omissions that are the subject of the order, as well as the manner of noncompliance must be included in the enforcement order. *Id.* § 157.166(a)(2)-(3). "A criminal contempt conviction for disobedience to a court order requires proof beyond a reasonable doubt of: (1) a reasonably specific order;

(2) a violation of the order; and (3) the willful intent to violate the order." *Ex parte Chambers*, 898 S.W.2d 257, 259 (Tex. 1995) (orig. proceeding).

"A contempt order is void if it is beyond the power of the court or violates due process." *In re Office of the Att'y Gen.*, 422 S.W.3d 623, 628 (Tex. 2013) (orig. proceeding). "If the trial court's contempt order in this case is not void, there was no abuse of discretion." *Id.* As the party who filed this proceeding, Mother has the burden to establish that her noncompliance with the trial court's orders was not willful or that she was unable to comply. *See Chambers*, 898 S.W.2d at 261. We do not weigh the evidence in reviewing the trial court's ruling; instead, we determine only if there is no evidence to legitimize the trial court's finding of contempt. *Id.* at 261-62.

Failure to Surrender

In her first issue, Mother argues the contempt order is void for lack of due process because the SAPCR order and Father's motion for contempt failed to provide the required notice under established Texas law. Mother argues the phrase in the SAPCR order which requires her to "surrender" the child is too vague for her to know exactly what duties and obligations were imposed on her. In the alternative, she argues, the contempt order is void because there is no evidence that Mother failed to "timely surrender" the Child at the airport. We need not consider whether the Mother received adequate notice because we conclude the evidence in the record

3

does not support the trial court's finding that Mother failed to timely surrender the Child as alleged in Father's motion for contempt and found by the trial court in the contempt order.

The 2018 SAPCR order required that Mother "surrender the Child at an airport near [Mother's] residence at the beginning of each period of [Father's] possession." Additionally, it ordered that Mother "deliver the Child to the airport from which the Child is scheduled to leave at the beginning of each period of possession at least two hours before the scheduled departure time." It further stated that "[Mother] shall surrender the Child to a . . . parent . . . who will be flying on the same flight on which the Child is scheduled." According to the record, on the date in question, Father and the Child had tickets for a flight with a 5:15 p.m. departure time. Because school was dismissed at about 3:00 p.m., the parents agreed that Mother would travel directly from school to Hobby Airport so that they would arrive at the airport at 4:00 p.m. According to Father, Mother arrived at the airport departure curb seven or eight minutes after 4:00 p.m. Although Father agreed that Mother's arrival at the airport satisfied their agreement, Father claimed Mother failed to timely surrender the Child because the Child refused to get out of Mother's vehicle for another 50 minutes.

Father testified that Mother told him that the Child would not get out of the vehicle. He claimed Mother opened the door but physically blocked his access to the Child. Father stated that he attempted to approach the vehicle and tried to remove

4

the Child from the vehicle at least three times, but Mother was at the passenger door. Father testified that Mother reached out and touched him from behind at least three times while he was reaching in the car to undo the Child's seat belt and remove him from the vehicle. He claimed that he withdrew when he felt her hands on his back trying to pull him away. According to Father, Mother eventually opened the door, and the Child left the vehicle. Father and the Child sprinted to the gate and departed on their scheduled flight.

Father testified that he recorded portions of the encounter with his cellular telephone. According to Father, the recordings stopped when it required an upload to the cloud. The recordings were admitted into evidence and viewed by the judge during the hearing.

The first recording, which is marked 4:09 p.m., shows the vehicle's door is open and Mother is in the door talking to the Child, then she steps away while Father tells the Child it is time to go and complains that Mother has failed to execute her responsibilities. Mother tells Father that the Child is telling Father he does not want to go because he wants to go to school the next day. The second recording, marked 4:12 p.m., shows Mother opening the vehicle's front passenger door. The Child is in the passenger seat, unbuckled. Father can be heard stating that Mother has coached the Child and Mother also asks Father if he is going to use violence against the Child. The recording shows that Mother moves to a position at the rear passenger door

5

while Father complains that the Child is not doing what he is told, and that Mother is allowing the behavior. Mother gestures to the open door. The third recording, marked 4:15 p.m., shows Mother at the rear passenger door of the vehicle with the front passenger door open and the Child unbuckled in the front passenger seat. The fourth recording, marked 4:27 p.m., includes the Father telling Child not to interrupt while Father is talking to Mother. Another recording, marked 4:29 p.m., shows Mother standing at the open door while Father states he is going to file an enforcement action and Father accuses Mother of pulling a stunt. Mother tells Father that Child is "right there" and she did not drive an hour in the rain to the airport to "not to hand [the Child] over." In the recording beginning at 4:34 p.m., Mother can be seen standing near the car door while the Child whines and Father describes ways in which Mother is a poor parent. Mother can be heard stating that Father behaved similarly with another child. The next recording marked two minutes later, contains a recording of Mother explaining to Father that the Child is telling Father why he does not want to go. Father can be heard saying that the Child could have called him, but Father says the Child does not return his calls. In a recording marked two minutes later, Mother tells Father she brought the Child to the airport and Mother tells Father that the Child does not want to miss school. At 4:40 p.m., Father states that he is going to get his son. At 4:41 p.m. Father turns the camera away from the vehicle towards Mother, who is standing behind Father and talking about Father's daughter.

6

At 4:45 p.m., the Child has moved from the front passenger seat to the driver's seat. At 4:47 p. m., Father tells Mother she needs to get the Child out of the car. Mother asks if he wants her to "beat" the Child. Father says he is going to change the custody situation.

In his brief, Father argues that the recordings show that Mother engaged in alienating behavior disguised as encouragement. He argues that when Mother tells the Child to "do[] something fun" with Father, she is leading the Child to believe he has a choice in the time he spends with Father. Father compares this case to *Ex parte Rosser*, where the trial court rejected the alleged contemnor's defense that he was unable to comply with the visitation order. *See* 899 S.W.2d 382, 386 (Tex. App.—Houston [14th Dist.] 1995, orig. proceeding). In *Rosser*, the reviewing court reasoned that the trial court could reject the interested witnesses' testimony that the child refused to go with her mother and her father could not make her go. *Id.*

Unlike *Rosser*, where the issue was whether the alleged contemnor established his defense of inability to comply with the order, in this case there is no evidence that Mother violated the SAPCR order. The SAPCR order required Mother to deliver the Child to the airport two hours before the scheduled flight and surrender him to Father. The motion to enforce alleged that Mother failed to timely surrender the Child. According to the evidence presented at the hearing, Mother delivered the Child to the airport as required by the SAPCR order. Mother could not possibly pick

up the Child at the end of the school day and arrive at the airport two hours before the flight Father had booked, and Father did not suggest that she could have done so. Rather, Father alleged Mother failed to timely surrender the Child because she did not physically remove the Child from the vehicle until approximately 50 minutes after they arrived at the airport. Father was present the entire time and for almost all that time Father had unimpeded access to the Child. The recordings demonstrate that there were moments when Mother positioned herself between the Father and the Child, but the recordings reveal no observable interference with the transfer of possession. Father testified that Mother pulled at his back when he attempted to unbuckle the Child, but Mother delivered the Child to the designated location at the arranged time and for most of the recorded encounter the Child was unrestrained, the door to the vehicle was open, Mother was not blocking the door to the vehicle and Father had a clear path to the Child. Father remained at the drop-off curb verbally criticizing Mother and Mother verbally responding to Father. While the recordings clearly depict both parents mutually engage in a discussion about each other and show the parents argue with one another, there is no evidence that Mother failed to surrender the Child as required by the SAPCR order and as alleged in the motion to enforce. Therefore, we conclude that the contempt order cannot be sustained based upon Mother's alleged failure to surrender the child at the airport. We sustain issue one.

8

## Monitored Communications

In her second issue, Mother argues the contempt judgment is void for lack of due process because the SAPCR order and the motion for enforcement failed to provide the required notice under Texas law, the motion failed to comply with Section 157.002(c) of the Texas Family Code, and the contempt judgment fails to state the date of each occasion when Mother failed to comply with the SAPCR order's prohibition against monitored communications between Father and the Child.

Mother received notice of the contempt charge through Father's motion for enforcement. Father alleged in the motion for enforcement that Mother "monitors the electronic communications (FaceTime) sessions between [Father] and the child [] without having a good faith belie[f] that the child is having a problem, if so, she failed to advise [Father] that the communication is being monitored." Mother received no notice of the dates of the alleged violations. An alleged contemnor is entitled to notice of the date of each alleged violation. *See* Tex. Fam. Code Ann. § 157.002 (c); *see also Ex parte Arnold*, 926 S.W.2d 622, 624 (Tex. App.—Beaumont 1996, orig. proceeding). Furthermore, the trial court failed to find the date of each occasion when Mother failed to comply with the order. *See* Tex. Fam. Code Ann. § 157.166(b). We conclude that the trial court deprived Mother of due process by failing to provide sufficient notice before adjudicating her guilty of contempt and by

failing to make a finding on the date of the alleged violation. Accordingly, the contempt order is void as to this alleged violation. We sustain issue two.

## Health Information

In her third issue, Mother argues the contempt judgment is void for lack of due process because Father's motion for enforcement and the contempt judgment failed to state the date of each alleged violation. The allegations in Father's motion for enforcement provided to Mother her only notice of the manner of her alleged noncompliance with the SAPCR order. *See* Tex. Fam. Code Ann. § 157.002(a)(2). Father's motion for enforcement alleged that

> [f]rom August 2018 until May 29, 2019, [Mother] failed to inform [Father] in a timely manner of significant information concerning the health, education, and welfare of the Child by failing [to] provide [Father] with information about the psychological health and treatment of the [Child] to wit, the [Child] had been to at least fourteen (14) therapy appointments, dating back to August 2018. Only after discovering that the child had secretly been seeing a therapist, [Father] on June 4, 2019 specifically requested information on the psychological health and treatment of the child and the only information provided was approximate dates of sessions.

In its contempt order, the trial court found that "[f]rom August 2018 until May 29, 2019, [Mother] failed in her affirmative duty to inform [Father] in a timely manner of significant information concerning the health, education, and welfare of the Child by failing [to] provide [Father] with information about the psychological health and treatment of [Child]." The trial court found Mother's actions were willful and intentional and that she had an ability to comply.

10

A respondent may be found in contempt only for violations that are specifically pleaded in the motion for enforcement under Section 157.002. *See In re Office of the Att'y Gen.*, 422 S.W.3d at 630. A judgment of contempt without support in the evidence is void. *Ex parte Davila*, 718 S.W.2d 281, 282 (Tex. 1986). Where one term of contempt is assessed for more than one act of contempt and at least one of those acts is not punishable by contempt, the entire judgment of punitive contempt is void. *Ex parte Jordan*, 787 S.W.2d 367, 368 (Tex. 1990).

Mother's failure to inform Father that Child had been to therapy appointments was pleaded and found as a single violation of the SAPCR order. In the contempt hearing, Father testified that on May 28, 2019, in an e-mail Mother informed Father for the first time that the Child had "been working with a therapist to communicate his feelings to you so the resentment doesn't keep building." At Father's request, the following week Mother provided the name and contact information for the therapist. Father asked for the dates on which the Child may have had a session with a therapist, and on June 12, 2019, Mother replied "Best I can go back and gather dates, here are the dates [Child] saw the therapist: 8/27/18, 9/20/18, 10/1/18, 10/13/18, 11/27/18, 12/4/18, 12/10/18, 1/3/19, 1/29/19, 2/19/19, 3/5/19, 4/2/19, 5/9/19, 5/31/19." This e-mail identified fourteen dates, only thirteen of which fell within the date range alleged in the motion for enforcement and found in the contempt judgment. The most recent listed date occurred after the date on which Mother told

11

Father that the Child had been working with a therapist. There is no evidence in the record that from August 2018 until May 29, 2019, Mother failed to inform Father in a timely manner that the Child had been to at least fourteen therapy appointments. Because no evidence supports the contempt judgment as to this violation, the judgment of contempt is void. *See id.* We sustain issue three.

Attorney's Fees

In her fourth issue, Mother argues the trial court clearly abused its discretion by awarding attorney's fees of $3,667 as child support to be paid in monthly installments of $300. Section 157.167(b) of the Texas Family Code authorizes a trial court to award fees, as follows:

> If the court finds that the respondent has failed to comply with the terms of an order providing for the possession of or access to a child, the court shall order the respondent to pay the movant's reasonable attorney's fees and all court costs in addition to any other remedy. If the court finds that the enforcement of the order with which the respondent failed to comply was necessary to ensure the child's physical or emotional health or welfare, the fees and costs ordered under this subsection may be enforced by any means available for the enforcement of child support, including contempt, but not including income withholding.

Tex. Fam. Code Ann. § 157.167(b).

The trial court awarded attorney's fees without finding that the order Mother failed to comply with was necessary to ensure the child's physical health or emotional welfare. Because such a finding is necessary for an award of attorney's fees as child support, the trial court clearly abused its discretion by awarding the fees

12

as child support. *See id.*[1] Because we conclude the evidence in the record is insufficient to justify the amount of attorney's fees awarded in the contempt judgment, we find that the trial court abused its discretion by awarding attorney's fees in the amount of $3,667. We sustain issue four.

We are confident that the trial court will vacate the contempt judgment. A writ of mandamus shall issue only in the event the trial court fails to comply.

PETITION CONDITIONALLY GRANTED.

PER CURIAM

Submitted on April 13, 2020
Opinion Delivered September 30, 2020

Before McKeithen, C.J., Kreger and Johnson, JJ.

---

[1] We further note that when a statute authorizes fee-shifting, the party seeking a fee award must prove the reasonableness and necessity of the requested attorney's fees. *See Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 496 (Tex. 2019); *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818-19 (Tex. 1997). Father's attorney testified that his fees were reasonable and necessary, but the billing records he submitted to the trial court do not identify the person or persons performing the particular services and he provided no explanation for the different hourly rates reflected in the records.