# IN THE SUPREME COURT OF TEXAS

═════════════
No. 11-0255
═════════════

IN RE THE OFFICE OF THE ATTORNEY GENERAL

════════════════════════════════════════════════════════
ON PETITION FOR WRIT OF MANDAMUS
════════════════════════════════════════════════════════

**Argued February 27, 2012**

JUSTICE LEHRMANN delivered the opinion of the Court.

"The court may not find a respondent in contempt of court for failure to pay child support if the respondent appears at the hearing with . . . evidence . . . showing that the respondent is current in the payment of child support as ordered by the court." TEX. FAM. CODE § 157.162(d). We are called upon to interpret this section of the Texas Family Code, which provides a mechanism by which an obligor who has violated a child support order may avoid a contempt finding. We hold that this language is unambiguous and means what it says: an obligor must be current on court-ordered child support payments due at the time of the enforcement hearing, regardless of whether those payments have been pled in the motion for enforcement, in order to invoke section 157.162(d) to avoid a finding of contempt where contemptuous conduct has otherwise been properly pled and established. Holding otherwise would contravene the statute's plain language and allow a recalcitrant obligor to escape a valid contempt finding by paying only those payments pled in a

motion to enforce while continuing to disobey the prior order before the enforcement hearing. We therefore hold that the trial court did not abuse its discretion in entering a contempt order in this case. We conditionally grant relief and instruct the court of appeals to vacate its judgment, thereby reinstating the trial court's contempt order.

## I. Facts

Noble Ezukanma, M.D. (Noble) was ordered to pay $5,400 each month to Njideke Lawreta Ezukanma (Lawreta) for the support of their six children. Noble only made partial payments in the months of December 2007 through February 2008, and he failed to make any payment at all in March, April, and June of 2008, resulting in an arrearage of $23,044.78 on June 9, 2008. The Tarrant County Domestic Relations Office filed a motion to enforce the support order in June 2008.[1] The motion asserted six counts of contempt, specifically alleging each payment failure, the amount of any partial payments made, and the total outstanding arrearage as of June 9, 2008. In the motion, the Office requested that Noble be held in contempt for each of six violations of the support order and that the court recognize the total outstanding arrearage at the time of the hearing on the motion.

Although a hearing on the motion was initially set for the following month, it was not held until February 2009. In late June 2008, Noble paid off the entire pled arrearage with a lump sum

---

[1] Chapter 231 of the Family Code designates the Office of the Attorney General as the agency responsible for implementing federal Title IV-D requirements regarding child support. TEX. FAM. CODE § 231.001. That chapter also allows the Office to delegate its Title IV-D duties to other agencies. *Id.* § 231.002(c). Chapter 203 provides for the creation of domestic relations offices to collect, monitor, and enforce child support in their respective jurisdictions. *Id.* §§ 203.001–.007. The Tarrant County Domestic Relations Office, acting as a Title IV-D Child Support Monitoring Program for Tarrant County, filed the motion to enforce in this case on Lawreta's behalf, pursuant to its statutory powers. *See id.* § 203.004(a)(3)(B). Under the terms of the agreement between the County Domestic Relations Office and the Attorney General's Office, the Domestic Relations Office provides trial court Title IV-D services, while the Attorney General handles both trial court and appellate matters. For a discussion of Title IV-D, see footnote 2 and accompanying text.

2

payment. But after making this payment, Noble immediately reverted to making only partial payments during the remaining intervening months between the filing of the motion and the hearing. By the time the hearing was held in February 2009, Noble had accumulated a new arrearage of $28,656.56, which the trial court reduced to a money judgment. The trial court also held Noble in contempt for the failures to make timely child support payments that were due under the support order on March 1, 2008, April 1, 2008, and June 1, 2008, and sentenced him to serve 174 days in jail on the second and fourth weekends of every month.

Noble filed a petition for writ of mandamus in the court of appeals, arguing that section 157.162(d) of the Texas Family Code precluded a finding of contempt by the trial court. Section 157.162(d) provides:

> The court may not find a respondent in contempt of court for failure to pay child support if the respondent appears at the hearing with a copy of the payment record or other evidence satisfactory to the court showing that the respondent is current in the payment of child support as ordered by the court.

TEX. FAM. CODE § 157.162(d).[2] Noble argued that this provision prohibits a finding of contempt for missed payments alleged in the motion to enforce that, though untimely under the support order, had been satisfied prior to the hearing. In a divided decision, the court of appeals adopted this interpretation and held that Noble could invoke the statute at the hearing, despite the outstanding $28,656.56 arrearage, because he had become "current" on the missed payments for March, April, and June that were pled in the motion. The court granted mandamus and habeas corpus relief,[3] ordering the trial court to vacate its contempt order. Both Lawreta and the Office of the Attorney General petitioned this Court for mandamus relief, arguing that the court of appeals abused its discretion in granting mandamus relief and seeking reinstatement of the trial court's contempt order.

---

[2] This subsection is part of a section of the Family Code dealing with "Proof" at an enforcement hearing. The provision further provides, in pertinent part:

(c) The movant may attach to the motion a copy of a payment record. The movant may subsequently update that payment record at the hearing. If a payment record was attached to the motion as authorized by this subsection, the payment record, as updated if applicable, is admissible to prove:
    (1) the dates and in what amounts payments were made;
    (2) the amount of any accrued interest;
    (3) the cumulative arrearage over time; and
    (4) the cumulative arrearage as of the final date of the record.

(c-1) A respondent may offer evidence controverting the contents of a payment record under Subsection (c).

. . .

(e) Notwithstanding Subsection (d), the court may award the petitioner costs of court and reasonable attorney's fees in a proceeding described by that subsection if the court finds that:
    (1) on the date the motion for enforcement was filed, the respondent was not current in the payment of child support as ordered by the court; and
    (2) the respondent made the child support payments described by Subsection (d) after the date the respondent was served notice of the motion or otherwise discovered that the motion for enforcement had been filed.

[3] Because Noble was only technically imprisoned on some weekends, he sought both habeas corpus and mandamus relief from the trial court's contempt order.

## II. Discussion

Child support collection is serious business; so much so that the federal government has enacted legislation requiring states to abide by certain mandates to help struggling parents obtain child support in order to receive federal funding. *See* 42 U.S.C. §§ 654, 666 (2006) (called Title IV-D).[4] No less serious are the rights of those accused of contemptuously failing to pay child support, invoking due process protections when findings of contempt are sought. Recognizing the importance of both, the Legislature has carefully crafted a framework for ensuring compliance with child support orders through contempt and other enforcement mechanisms.

### A. Contempt as a Child Support Enforcement Mechanism

One of the primary tools that child support enforcement agencies depend on to encourage obligors to timely pay child support is the contempt power of the court. The prevalence of this enforcement mechanism has its roots in the historical lineage of child-related orders, which were originally matters of equity, enforceable only by contempt rather than by damages. *See* Margaret M. Mahoney, *The Enforcement of Child Custody Orders By Contempt Remedies*, 68 U. PITT. L. REV. 835, 843–44 (2007). Contempt is an inherent power of the court, *Ex parte Gorena*, 595 S.W.2d 841, 843 (Tex. 1979) (orig. proceeding), and chapter 157 of the Family Code provides the statutory framework for utilizing this power as a mechanism to enforce child support orders and other final

---

[4] The goal of the Title IV-D child support enforcement program is to help single parents obtain child support for their children. The mission is to enhance the well-being of children by assuring that assistance in receiving financial support is available through various mechanisms, including enforcement of child support obligations. *See generally* Janelle T. Calhoun, *Interstate Child Support Enforcement System: Juggernaut of Bureaucracy*, 46 MERCER L. REV. 921 (1995). Many of the provisions set out in Chapter 157 of the Texas Family Code were adopted pursuant to this federal mandate. *See* Doretha Smith Henderson, *Title IV-D and Child Support Enforcement: Confusion and Misinformation Abound*, 65 TEX. B.J. 504, 506 (2002).

orders in family court proceedings. Chapter 157 provides for the filing of a motion to enforce requesting contempt and other relief, TEX. FAM. CODE § 157.001, specifies what must be included in this request, *id.* § 157.002(b)(2), enumerates available affirmative defenses, *id.* § 157.008, and explains the procedures for a hearing on the motion, *id.* §§ 157.061–.066.

Upon finding an obligor in contempt, the trial court may, in its discretion, impose a sentence that is either civil or criminal, or both. *See id.* § 157.166 (discussing the required contents of an enforcement order). Civil contempt is prospective, involving measures to encourage a contemnor to pay child support arrearages, while criminal contempt is punitive, usually imposing jail time for past failures to pay. *See In re Reece*, 341 S.W.3d 360, 365 (Tex. 2011). Chapter 157 also provides a third option: a court may find an obligor in contempt and impose a jail sentence, but suspend commitment and place the obligor on community supervision. TEX. FAM. CODE § 157.165. The obligor may avoid incarceration and remain on community supervision so long as he or she complies with statutorily authorized conditions set by the trial court. *Id.* § 157.211. This third option is an extremely effective tool for the enforcement of child support because it (1) encourages obligors to pay to avoid serving their jail sentences, and (2) keeps them out of jail, thereby enabling them to work and avoid further arrearages, for so long as they comply with the court order. Significantly, utilization of this tool is dependent upon a finding of contempt.

A contempt order is void if it is beyond the power of the court or violates due process. *Ex parte Barnett*, 600 S.W.2d 252, 254 (Tex. 1980). If the trial court's contempt order in this case is not void, there was no abuse of discretion. *In re Am. Homestar of Lancaster, Inc.*, 50 S.W.3d 480, 483 (Tex. 2001).

## B. The Purging Provision in Section 157.162(d)

In 2007, the Legislature enacted Family Code section 157.162(d), a purging provision[5] that allows a child support obligor to escape a valid finding of contempt if the obligor demonstrates at the enforcement hearing that he or she is "current in the payment of child support as ordered by the court." Absent the operation of section 157.162(d), an obligor could be held in contempt for failing to make payments in a timely fashion as required by the support order, regardless of the obligor's payment history since the filing of the motion to enforce. *See Ex parte Stephens*, 734 S.W.2d 761, 764 n.5 (Tex. App.—Fort Worth 1987, orig. proceeding); *In re Miller*, 584 S.W.2d 907, 908 (Tex. Civ. App.—Dallas 1979, orig. proceeding); *Ex parte Grothe*, 581 S.W.2d 296, 298 (Tex. Civ. App.—Austin 1979, orig. proceeding); *Ex parte Boyle*, 545 S.W.2d 25, 27 (Tex. Civ. App.—Houston [1st Dist.] 1977, orig. proceeding) ("The fact that relator was not in arrears at the time of the hearing does not render the court's judgment void; the relator repeatedly failed to comply with the time provisions of the divorce decree."). Section 157.162(d) thus offers a person who has willfully disobeyed a support order a way to avoid a finding of contempt as an incentive to encourage obligors to pay back-due arrearages. The disputed issue in this case involves the scope of conduct that is necessary for an obligor to demonstrate compliance with, and therefore invoke the benefit of, the purging provision.

---

[5] By "purging provision," we refer to the fact that the subsection allows an obligor to purge himself or herself of the consequences of conduct that would otherwise be subject to a finding of contempt by fulfilling the conditions of the statute. *Cf. Ex parte Chambers*, 898 S.W.2d 257, 266 (Tex. 1995) (Gonzalez, J., dissenting) (describing the use of a purging provision in a coercive contempt sentence, where a contemnor is sent to prison but "carries the keys of [his] prison in [his] own pocket" (quoting *Shillitani v. United States*, 384 U.S. 364, 368 (1966)) (alteration in original)).

Under Lawreta's interpretation, this statute would apply only if the respondent demonstrated he or she had strictly complied with the support order by timely making all payments when they became due. Noble, on the other hand, contends that a respondent may invoke the purging provision by showing at the hearing that he or she has caught up on the specific missed payments pled in the motion to enforce. Thus, Noble asserts, the time period between the filing of the motion to enforce and the hearing on that motion acts as a grace period, allowing an obligor to avoid contempt by paying all pled amounts owed, even though he or she has accrued additional arrearages by the date of the hearing. Finally, the Office interprets section 157.162(d) to purge a respondent from contempt for willful failure to timely make properly pled payments only if he or she is current in the payment of all amounts that have become due under the support order as of the date of the enforcement hearing, regardless of whether such payments were pled in the motion. We conclude that the Office's interpretation is the only one that comports with the plain language of the statute and therefore hold that an obligor may invoke the purging provision in section 157.162(d) by demonstrating that he or she has no outstanding child support obligations as of the date of the enforcement hearing.

### C. The Plain Meaning of Section 157.162(d)

Legislative intent is best revealed in legislative language: "Where text is clear, text is determinative." *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009). We take the Legislature at its word, and the truest measure of what it intended is what it enacted. *See Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 651–52 (Tex. 2006). This text-based approach requires us to study the language of the specific section at issue, as well as the statute as

a whole. *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 866 (Tex. 1999). We must endeavor to read the statute contextually, giving effect to every word, clause, and sentence. *Tex. Dep't of Ins. v. Am. Nat'l Ins. Co.*, ___ S.W.3d ___, ___ (Tex. 2012). Because the statute itself is what constitutes the law, we have held that unambiguous text equals determinative text (barring an absurd result). *Summers*, 282 S.W.3d at 437. At this point, "the judge's inquiry is at an end," *Sheshunoff*, 209 S.W.3d at 652, and extratextual forays are improper: "When a statute's language is clear and unambiguous, it is inappropriate to resort to rules of construction or extrinsic aids to construe the language." *City of Rockwall v. Hughes*, 246 S.W.3d 621, 626 (Tex. 2008).

Section 157.162(d) allows a respondent to avoid a finding of contempt when the respondent shows at the enforcement hearing that he or she "is current in the payment of child support as ordered by the court." The parties do not dispute, and we so hold, that the date relevant to the application of this provision—i.e., the date on which the respondent must demonstrate that he or she is "current"—is the date of the hearing. In turn, the plain language of the provision requires the respondent to show that no outstanding arrearage exists as of that date. The statute's language does not support Noble's suggestion that the "child support" on which an obligor must be current at the time of the hearing includes only the payments pled in the motion to enforce.[6] The statute requires that an obligor be current on child support payments "as ordered by the court." The only "order" in

---

[6] Nor does it support Lawreta's interpretation, under which the purging provision would apply only if the respondent had strictly complied with the support order by timely making all payments when they became due. Because an obligor who has not violated the support order has not engaged in contemptuous conduct in the first place and has no need for the purging provision, this interpretation would render section 157.162(d) meaningless—a result we must avoid. *Mid-Century Ins. Co. of Tex. v. Ademaj*, 243 S.W.3d 618, 621 (Tex. 2007) ("[W]e read the statute as a whole and interpret it to give effect to every part.").

9

effect at the time of an enforcement hearing is the prior court order setting out the obligor's child support obligations. Thus, the phrase "as ordered by the court" necessarily refers to that earlier order, which specifies all child support payments owed by the obligor, including those to be paid after the motion to enforce is filed. Noble's interpretation would require us to interpret "as ordered by the court" in section 157.162(d) to have no meaning at all, which violates the rules of statutory construction. *See Tex. Dep't of Ins.*, ___ S.W.3d at ___.

Moreover, had the Legislature intended to require payment only of the amounts pled in the motion to enforce, it had a number of ways to say so. It could have required proof that the respondent "is current in the payment of child support pled in the motion to enforce" or that respondent "has paid all arrearages listed in the motion to enforce." It did not do so, and we assume the Legislature meant what it said.[7] *See Fitzgerald*, 996 S.W.2d at 865–66. We therefore hold that, to be "current in the payment of child support as ordered by the court" and thereby invoke the benefit of the purging provision, an obligor must be current on all child support obligations as of the date of the hearing.[8] The missed payments alleged in the motion to enforce serve as the basis for the

---

[7] Noble contends that his interpretation is supported by the Legislature's enactment of section 157.162(e), which authorizes an attorney's fees award to the movant if the respondent invokes the purging provision in subsection (d), but was not current on his or her support obligations on the date the motion was filed and made the required payments only after being notified that the motion had been filed. TEX. FAM. CODE § 157.162(e). We disagree. This provision merely serves to compensate the movant for some of the costs associated with enforcing support obligations even where the purging provision may be utilized. It neither narrows nor widens the scope of that provision.

[8] We also observe that, in many states, any impingement by the legislature on courts' inherent contempt powers is seen as a violation of the separation of powers doctrine. *See* Paul A. Grote, Note, *Purging Contempt: Eliminating the Distinction Between Civil and Criminal Contempt*, 88 WASH. U. L. REV. 1247, 1277–79 (2011) (discussing the position of various states and the federal courts on legislative reform of contempt powers). We have recognized the Legislature's authority to establish some limitations on a court's criminal contempt power. *See In re Reece*, 341 S.W.3d at 366 n.9 (citing TEX. GOV'T CODE § 21.002(b), which provides that punishment for criminal contempt may not exceed $500 or confinement for more than six months in jail). Nevertheless, the separation-of-powers concerns raised by other courts further convince us of the propriety of interpreting subsection (b)'s purging provision as being triggered only in narrow

10

contempt finding, but they do not limit the payments that must be current to obtain the protection of the purging provision.

## D. The Purging Provision Does Not Implicate Notice Requirements

Noble argues that the Office's interpretation of the purging provision violates his rights to notice and due process because it allows a contempt finding to be based on a respondent's failure to make payments that were not specifically pled in the motion to enforce. We agree that specific violations of a court order must be pled to support a contempt finding. However, the purging provision does not affect the basis of the contempt finding; rather, it provides a basis for escaping an otherwise valid finding of contempt. We therefore disagree that the purging provision implicates notice requirements.

Noble's argument erroneously conflates the conduct that is the basis of a contempt finding, for which there must be specific notice in the motion for enforcement, and the conduct required to invoke the purging provision to escape such a finding. The pleading requirements for a motion to enforce are set out in section 157.002 of the Family Code. This provision requires such a motion to include the amount owed, the amount paid, and the amount of arrearages. TEX. FAM. CODE § 157.002(b)(1). If contempt is requested, the motion must also include "the portion of the order allegedly violated and, for each date of alleged contempt, the amount due and the amount paid, if any." *Id.* § 157.002(b)(2). Thus, a respondent may be found in contempt only for violations that are specifically pled in the motion for enforcement under section 157.002. Tellingly, the purging

circumstances, reserving as much of the court's inherent contempt power as possible. *See Quick v. City of Austin*, 7 S.W.3d 109, 115 (Tex. 1998) (noting that courts should interpret statutes to avoid constitutional infirmities).

provision contains *no* such pleading requirements. This lack of specificity in section 157.162(d) makes sense because specific violations do not form the basis for its use.[9] Rather, it can only be utilized as a means to avert contempt findings for properly pled violations by becoming "current" in the payment of support.

In turn, while respondents are clearly entitled to notice of the specific alleged conduct on which the motion for enforcement by contempt is based, they are not entitled to notice of all the ways they may *avoid* such a finding. The purging provision at issue is akin to an affirmative defense; as discussed above, it allows a respondent to avoid the consequences of his or her contemptuous acts, but does not govern the underlying violations for which contempt findings are sought.[10] In the context of criminal proceedings,[11] a charging instrument like an indictment must "charge[] the commission of the offense in ordinary and concise language in such a manner as to enable a person of common understanding to know what is meant, and with that degree of certainty that will give the defendant notice of the particular *offense with which he is charged*." TEX. CODE CRIM. PROC. art. 21.11 (emphasis added); *see also id.* art. 21.03 ("Everything should be stated in an indictment which

---

[9] *Cf. Ex parte Chambers*, 898 S.W.2d at 259 (explaining that criminal contempt conviction requires, *inter alia*, "violation" of "a reasonably specific order").

[10] We recognize that the purging provision is not contained in the statute expressly listing affirmative defenses to an allegation of contempt in a motion for enforcement. *See* TEX. FAM. CODE § 157.008. But it is analogous to an affirmative defense in that it precludes a contempt finding notwithstanding a proven violation of a prior order and places the burden of proof on the respondent to show that it applies. *See* BLACK'S LAW DICTIONARY 482 (9th ed. 2009) (defining an affirmative defense as "[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true," and noting that "[t]he defendant bears the burden of proving an affirmative defense").

[11] We have recognized that, because "contempt proceedings are quasi-criminal in nature," such proceedings "should conform as nearly as practicable to those in criminal cases." *Ex parte Sanchez*, 703 S.W.2d 955, 957 (Tex. 1986).

is necessary to be proved."). In contrast to these specific notice requirements with respect to the underlying offense, there is no requirement that a charging instrument provide notice of the affirmative defenses that may be available to a criminal defendant. Similarly, the notice to which respondents in contempt proceedings are entitled extends only to the violations for which they may be found in contempt, so that they can adequately prepare a defense to such allegations.

Further, even if our interpretation of the purging provision invoked due process concerns, which it does not, Noble's solution—interpreting the provision to require payment of only those amounts alleged in the motion for enforcement—does not address those concerns. Such allegations do not inform an obligor of the necessary conduct—being current on child support—that would invoke the purging provision. For example, a respondent served with a motion to enforce alleging specific violations of a support order would have sufficient notice to rebut the alleged violations or prove that he or she was unable to make the alleged payments when they were due. *See* TEX. FAM. CODE § 157.008(c). But the motion would not put the obligor on notice of how to invoke the purging provision even with respect to those violations that were specifically pled, as it would not inform the obligor that he or she will not be found in contempt as long as those amounts are paid up by the date of the hearing. To truly put an obligor on notice of what is necessary to avoid contempt under the purging provision, the motion to enforce would need to repeat the requirements that are already contained in the provision: that the obligor must bring "evidence satisfactory to the court showing that the respondent is current in the payment of child support as ordered by the court." *Id.* § 157.162(d). The statute simply does not and should not contain such a requirement. After all, the

13

original order establishing the support obligation, in conjunction with the statute itself, already informs the obligor of the amounts that must be paid in order to be current by the date of the hearing.

In this case, Noble was held in contempt for the failure to make timely support payments due on March 1, 2008, April 1, 2008, and May 1, 2008—arrearages that were specifically pled in the motion for enforcement and proven at the hearing. He had the opportunity to rebut those allegations and to raise the defense that he was unable to pay those pled arrearages when they were due. *See id.* § 157.008(c). The payments he missed after the motion for enforcement was filed form no part of the basis for contempt, but rather are relevant only in that they prevented Noble from invoking the benefit of the purging provision in section 157.162(d). And since the contempt findings comported with due process, the Legislature was within its province to require full payment of child support, including payments not specified in the motion to enforce, for Noble or any other respondent to avoid the consequences of his contemptuous acts.

### III. Conclusion

The plain language of section 157.162(d) of the Texas Family Code, the best guide to the statute's meaning, confirms that the purging provision is only activated if an obligor is current on *all* child support obligations at the time of the enforcement hearing, not just those pled in the motion to enforce. This interpretation is consistent with the statutory framework for enforcement of support orders and poses no due process concerns. Accordingly, the trial court did not abuse its discretion

in holding Noble in contempt.  We conditionally grant a writ of mandamus and order the court of appeals to vacate its judgment, thereby reinstating the trial court's contempt order.  The writ will issue only if the court of appeals fails to comply.

_____
Debra H. Lehrmann
Justice

**OPINION DELIVERED:**  March 8, 2013