

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00266-CV

_____

IN RE DAVID MARK LOYD

On Appeal from the 481st District Court
Denton County, Texas
Trial Court No. 21-6418-393

Before Sudderth, C.J.; Kerr and Bassel, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

### I. Introduction

In two issues, relator David Mark Loyd seeks relief from a judgment of criminal contempt and related confinement orders. In his first issue, he complains that the trial court's orders are void because the real party in interest (RPI), his ex-wife, failed to plead the amount of child-support arrearages as required by Family Code Section 157.002. In his second issue, he asserts that the trial court abused its discretion when it failed to timely determine whether incarceration was a possible result of the contempt proceeding and thereby failed to timely admonish him of his Fifth Amendment privilege against self-incrimination.

The trial court's April 17, 2024 order of contempt and confinement sentenced relator to a 60-day period of custody based on three violations of the trial court's orders: (1) failure to pay the full amount of child support on January 1, 2024; (2) failure to pay the full amount of child support on February 1, 2024; and (3) calling RPI "one trampy woman" in front of their son on November 20, 2021, in violation of the trial court's temporary injunction against making disparaging remarks about each other in the children's presence. The trial court's April 18, 2024 order clarified that relator was to serve 60 days for each separate violation but that each period of confinement "shall run and be satisfied concurrently" and was not to exceed a

cumulative 60-day total. After relator filed his petition in this original proceeding,[1] we entered a stay of the confinement order requiring relator to surrender to the county jail on June 14, 2024, and requested a response from RPI.

Because we sustain relator's first issue, we grant his petition in part and sever out the two child-support findings and related provisions[2] from the contempt order. Because we overrule his second issue, we leave the remainder of the contempt order and its related confinement orders intact.

## II. Discussion

Contempt orders are not appealable. *Janson*, 614 S.W.3d at 727. A contempt order is void if it is beyond the power of the court or violates due process. *In re Off. of Atty. Gen.*, 422 S.W.3d 623, 628 (Tex. 2013) (orig. proceeding). If the trial court's contempt order is not void, then there is no abuse of discretion. *Id.*

---

[1]Relator characterized his filing as a petition for writ of habeas corpus, but because he was not confined at the time he filed his petition, we construed it as a petition for writ of mandamus. *See In re M.H.*, No. 02-23-00253-CV, 2024 WL 273498, at *1–2 (Tex. App.—Fort Worth Jan. 25, 2024, orig. proceeding) (mem. op.) (explaining that appellate courts have, on occasion, treated a petition seeking habeas relief as a mandamus proceeding when there is a threat of imminent incarceration); *see also In re Janson*, 614 S.W.3d 724, 727 (Tex. 2020) (orig. proceeding) ("When the contemnor is not jailed, the proper vehicle to challenge a contempt order is a writ of mandamus, which requires the contemnor to show that the trial court abused its discretion.").

[2]The trial court confirmed a child-support arrearage of $9,100 through April 17, 2024, and ordered that it be paid by 5 p.m. on May 16, 2024.

Contempt orders that involve commitment are considered "criminal" contempt. *In re M.W.*, No. 02-24-00212-CV, 2024 WL 2862535, at *2 n.5 (Tex. App.—Fort Worth June 6, 2024, orig. proceeding) (mem. op.). A criminal-contempt conviction for disobedience to a court order requires proof beyond a reasonable doubt of: (1) a reasonably specific order; (2) a violation of the order; and (3) the willful intent to violate the order. *Janson*, 614 S.W.3d at 727.

## A. Notice

In a case involving conduct outside the court's presence, due process requires that the alleged contemnor receive full and unambiguous notification of the accusation of any contempt, which should state when, how, and by what means the defendant has been guilty of contempt. *Ex parte Vetterick*, 744 S.W.2d 598, 599 (Tex. 1988) (granting relief when no motion for contempt was filed and no show-cause order or equivalent legal process was issued before the contempt hearing); *see* Tex. Fam. Code Ann. § 157.002(a)–(b) (setting out general requirements for a motion for enforcement and setting out specific requirements for a motion for enforcement of child support). A person may be held in contempt and imprisoned for failing to pay child support because the obligation to pay child support is a duty, not a debt. *In re C.F.*, 576 S.W.3d 761, 770 (Tex. App.—Fort Worth 2019, orig. proceeding); *see* Tex. Fam. Code Ann. § 157.001(b) ("The court may enforce by contempt any provision of a temporary or final order.").

4

As relator points out, Family Code Section 157.002(b) specifies that the contents for a motion for enforcement of child support "*must include* the amount owed as provided in the order, the amount paid, and *the amount of arrearages*." Tex. Fam. Code Ann. § 157.002(b)(1) (emphases added). "[T]he Legislature has carefully crafted a framework for ensuring compliance with child support orders through contempt and other enforcement mechanisms." *Off. of Atty. Gen.*, 422 S.W.3d at 627. "[A] respondent may be found in contempt only for violations that are specifically pled in the motion for enforcement under section 157.002." *Id.* at 630.

The supreme court has instructed us that in matters of statutory construction, "[w]here text is clear, text is determinative." *Id.* at 629 (quoting *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009)); *see Ochsner v. Ochsner*, 517 S.W.3d 717, 720 (Tex. 2016) (quoting same provision). In *Ochsner*, the court noted that Section 157.002(b)(1) required a trial court in a child-support-enforcement action to take into account the "amount of arrearages," which could not simply be "the amount owed as provided in the order." 517 S.W.3d at 721; *see In re Roisman*, 651 S.W.3d 419, 435 (Tex. App.—Houston [1st Dist.] 2022, orig. proceeding) (explaining that Section 157.002 sets out the pleading requirements for enforcement motions "[t]o assure full and complete notification").

RPI's first amended motion for enforcement as to violations 1 and 2 set out the amount of child support owed and the amount relator had paid as to each but not the amount of arrearages. Although RPI argues that "pleading the specific amount of the

5

arrearage is not necessary if the pleadings are sufficient to provide [relator] reasonable notice of the claims against him" and that relator could easily calculate the amount from the facts pleaded, to agree with her would require us to ignore Section 157.002(b)(1)'s plain language. We sustain relator's first issue and sever out the two child-support findings from the contempt order. Because relator failed to challenge the trial court's remaining finding, however, the contempt order, as modified, remains in place. *See* 6 McDonald & Carlson Tex. Civ. Prac. App. Prac. § 36:8 (2d ed.) (noting that, generally, "if any portion of the contempt order can stand as valid, the courts will make every effort to sever the order and let the valid portions stand").

### B. Waiver

In his second issue, relator argues that the trial court's orders are void because he was not timely admonished, relying on Family Code Section 157.163(a) and the trial court's erroneous statement of law to support his argument that he is entitled to relief.

Family-law contempt proceedings are considered quasi-criminal in nature, and their proceedings should conform as nearly as practicable to those in criminal cases. *In re Marks*, 365 S.W.3d 843, 845 (Tex. App.—Fort Worth 2012, orig. proceeding). This includes the Sixth Amendment right to counsel if the contemnor is at risk of incarceration. *Id.*

At a hearing on an enforcement motion, the trial court "must first determine whether incarceration of the respondent is a possible result of the proceedings." Tex.

Fam. Code Ann. § 157.163(a). If incarceration is a possible result, then the trial court "shall inform a respondent not represented by an attorney of the right to be represented by an attorney and, if the respondent is indigent, of the right to the appointment of an attorney." *Id.* § 157.163(b). Section 157.163 does not require the trial court to inform the alleged contemnor of his constitutional right to remain silent. *See Marks*, 365 S.W.3d at 846 ("The trial court also went beyond the mandates of [F]amily [C]ode [S]ection 157.163 by informing Marks that he had the constitutional right to remain silent and that he did not have to testify at the hearing."). The record reflects that relator was represented by counsel at the hearing; accordingly, the trial court did not violate Section 157.163.

Further, while "[m]any constitutional rights are accorded criminal contemnors, including the privilege against self-incrimination," *Ex parte Werblud*, 536 S.W.2d 542, 547 (Tex. 1976) (orig. proceeding), the alleged contemnor may waive the privilege by failing to claim it. *Ex parte Tankersley*, 650 S.W.2d 550, 551 (Tex. App.—Fort Worth 1983, orig. proceeding). And "the trial court has no duty to inform a testifying defendant, represented by counsel, of his right not to testify," *Gomez v. State*, Nos. 02-19-00129-CR, 02-19-00130-CR, 2020 WL 1808484, at *2 (Tex. App.—Fort Worth Apr. 9, 2020, no pet.) (mem. op., not designated for publication) (quoting *Johnson v. State*, 169 S.W.3d 223, 235 (Tex. Crim. App. 2005)), and "no independent duty to implement a defendant's Fifth Amendment privilege," *Johnson v. State*, 357 S.W.3d 653, 658 n.3 (Tex. Crim. App. 2012).

Here, after RPI testified, her counsel called relator to testify. Her counsel's first question was, "[D]o you acknowledge that you failed to pay the full amount of child support that was due on December 1st, 2024?" Relator replied, "I would have to look at my records, but I acknowledge that I've been unable to pay the full amount after I depleted my savings."

RPI's counsel objected to the nonresponsive answer, and the trial court sustained her objection and asked her whether RPI was requesting criminal contempt. When RPI's counsel said yes, the trial court proceeded to admonish relator about the privilege against self-incrimination, stating, "[Y]ou have the right to remain silent because anything you say can and will be used against you in a court of law," and informed him that he had to assert the right himself and to indicate that he was refusing to answer on the grounds that his reply might incriminate him and that asserting that privilege would allow the trial court to make a negative inference against him on the topic upon which the privilege was invoked.[3] The trial court then gave relator time—off the record and outside the courtroom—to confer with his counsel. When relator returned from conferring with his counsel, he testified and did not invoke his privilege against self-incrimination at any point.

Based on the record before us, we conclude that relator has waived his privilege. And in light of our disposition of his first issue, we further conclude that he

---

[3]This last admonition pertains to civil cases, not to criminal proceedings. *See Tex. Dep't of Pub. Safety Officers Ass'n v. Denton*, 897 S.W.2d 757, 763 (Tex. 1995).

8

was not harmed by his testimony—willing or unwilling—about child support. The record conclusively supports the trial court's finding on the third violation,[4] which relator did not challenge in this original proceeding. Accordingly, we overrule relator's second issue.

### III. Conclusion

Because we sustain relator's first issue, we grant his petition in part and sever out the two child-support findings and related provisions from the contempt order. Because we overrule his second issue, we leave the remainder of the contempt order and its related confinement orders intact.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered: June 28, 2024

---

[4]RPI produced a digital recording and transcript of the November 20, 2021 voicemail from the parties' son in which relator could be heard in the background telling him that she was "one trampy woman; I don't know why I ever married her." The trial court admitted the recording and transcript into evidence over relator's objection, which relator does not complain about in the instant proceeding, and listened to the recording in open court. After listening to the recording, the trial court stated, "With regard to violation 3, that is one of the most heartbreaking things I have ever heard, and [relator] does not appear moved at all by that."

9