# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## ON REMAND

---

## NO. 03-21-00131-CV

---

**Hannah R. Tanner, Appellant**

**v.**

**Texas State University, Appellee**

---

### FROM THE 207TH DISTRICT COURT OF HAYS COUNTY
### NO. 17-0354, THE HONORABLE WILLIAM R. HENRY, JUDGE PRESIDING

---

## O P I N I O N

This case returns to us on remand from the Texas Supreme Court, which determined that appellee Texas State University's challenge to the timeliness of appellant Hannah R. Tanner's service is a jurisdictional issue, properly raised in a plea to the jurisdiction. *See Texas State Univ. v. Tanner* (*Tanner II*), 689 S.W.3d 292, 296-97, 302 (Tex. 2024). The Texas Supreme Court remanded the case for this Court to determine whether the trial court properly granted the University's plea, a question that we did not reach because we had "concluded that untimely service does not pose a jurisdictional issue that a plea to the jurisdiction can resolve." *Id.* at 296-97.

In concluding otherwise, the Texas Supreme Court determined that timely service is part of the statutory prerequisite of bringing suit before the limitations period expires and thus is a part of that particular jurisdictional requirement for a suit against a governmental entity. *Id.* at

296 (citing Tex. Gov't Code § 311.034 (Waiver of Sovereign Immunity)); *see also id.* at 302 ("We accordingly hold that the statute of limitations, including the requirement of timely service, is jurisdictional in suits against governmental entities. The University's plea to the jurisdiction was therefore a proper vehicle to address Tanner's alleged failure to exercise diligence in serving the University."). The supreme court concluded that Tanner "has not established, and cannot establish, diligence in service on the University," which is a means to establish timely service. *Id.* at 304. However, the court directed this Court to consider the legal question of whether Tanner's service on the University's employee "satisfies her obligation to serve the University." *Id.* at 303.

"Because jurisdiction [over a governmental entity] depends on bringing suit within limitations, and because the statute of limitations requires timely service," we must determine whether Tanner's "service on [the University's employee] effectively *was* service on the University." *Id.* For the reasons explained below, we hold that Tanner's service on the University's employee is not effectively service on the University, and we affirm the trial court's grant of the University's plea to the jurisdiction.

**BACKGROUND**

The underlying facts and procedural history are well-known to the parties and have been set out in our prior opinion and the supreme court's opinion. Thus, we will limit our discussion of the facts and procedural history to those relevant to our analysis of whether Tanner timely served the University. As the supreme court noted, "[t]he relevant facts are largely undisputed, and we view them in the light most favorable to Tanner, the nonmovant." *Id.* at 297.

On October 4, 2014, Tanner was injured when she was thrown from a golf cart on the Texas State University campus. Dakota Scott, the University's employee, had been driving the

2

golf cart in the scope of his employment. Tanner brought this suit under the Texas Tort Claims Act against the Texas State University System, Scott, and the University, on September 29, 2016—less than a week before the expiration of the two-year limitations period for a personal-injury claim. *See* Tex. Civ. Prac. & Rem. Code § 16.003 (requiring a person to "bring suit" for personal injury "not later than two years after the day the cause of action accrues"); *see also generally id.* §§ 101.001-.109 (Texas Tort Claims Act).[1]

Tanner served the University System soon after filing suit, on October 4, 2016. Her original petition expressly states that she was not requesting service on either Scott or the University "at this time." At the end of October, the System filed an answer and a plea to the jurisdiction. On November 21, 2016, the System disclosed in its interrogatory responses to Tanner that it "is a separate entity and governmental unit from each of its component institutions" and that Scott had "never been employed by the Texas State University System."

A year and ten months later, on September 18, 2018, Tanner served Scott—but she still did not serve the University. (The System had filed a brief in support of its plea to the jurisdiction on August 30, 2018, and set the plea for hearing for September 19, 2018.) On December 3, 2018, the district court granted the System's plea to the jurisdiction and dismissed and severed Tanner's claims against the System from the case. Tanner did not appeal that ruling.

Tanner finally served the University on May 20, 2020—five-and-a-half years after her injury and three-and-a-half years after limitations had run. On June 2, 2020, the University answered, asserting the affirmative defense that Section 16.003's statute of limitations for personal-injury claims barred Tanner's claims. The University also moved to dismiss Scott

---

[1] Unless otherwise noted, all statutory references are to the Texas Civil Practice & Remedies Code.

pursuant to Section 101.106(e) of the Texas Tort Claims Act.[2]  On June 30, 2020, the trial court granted the University's motion to dismiss Scott pursuant to Section 101.106(e) and severed Tanner's claim against Scott and restyled the case.

On October 2, 2020, the University filed its plea to the jurisdiction and alternative motion for summary judgment, alleging that Tanner's lack of diligence in serving it resulted in her suit being untimely and barred by the statute of limitations.  The trial court granted the plea to the jurisdiction without ruling on the alternative summary-judgment motion and dismissed with prejudice Tanner's claims against the University.

Tanner appealed from that order, and we reversed.  *Tanner v. Texas State Univ.* (*Tanner I*), 644 S.W.3d 747, 753 (Tex. App.—Austin 2022), *rev'd and remanded*, 689 S.W.3d 292 (Tex. 2024).  We held that untimely service does not implicate jurisdiction under Texas Government Code Section 311.034, and thus, governmental entities cannot challenge untimely service through a plea to the jurisdiction.  *See id.* at 752.  As explained above, the Texas Supreme Court reversed our judgment and remanded the case because it concluded that "the statute of limitations is not satisfied, until the plaintiff achieves *both* steps"—"filing the petition *and* achieving service of process."  *Tanner II*, 689 S.W.3d at 300.

---

[2]  The Texas Supreme Court has held that "[b]y filing [a motion to dismiss under Section 101.106(e)], the governmental unit effectively confirms the employee was acting within the scope of employment and that the government, not the employee, is the proper party."  *Texas Adjutant Gen.'s Office v. Ngakoue*, 408 S.W.3d 350, 358 (Tex. 2013); *see also University of Tex. Health Sci. Ctr. at Houston v. Rios*, 542 S.W.3d 530 (Tex. 2017) (reaffirming that employer's filing of motion to dismiss under Section 101.106(e) effectively confirms that employee was an employee acting within scope of employment).

4

## ANALYSIS

The question presented to us on remand is whether the University established its entitlement to dismissal as a matter of law in its plea to the jurisdiction. *Id.* at 302. As the supreme court pointed out, Tanner "has identified no disputed *fact* issue related to her exercise of diligence or anything else in connection with service—that is to say, she has identified no factual question that would be fit for presentation to a jury." *Id.* at 302-03. The court identified the three legal arguments that Tanner made to explain her delay, stating that she cannot establish her diligence in service under any of these arguments, but that the first one warrants remand to us "for resolution of a potentially dispositive legal question." *Id.* at 303.

The legal question presented to us for consideration is whether Tanner's "service on Scott effectively *was* service on the University." *Id.* After remand, we requested supplemental briefing from the parties on the two potentially dispositive issues identified by the supreme court: (1) whether Tanner's service on Scott satisfied her obligation to serve the University, his employer, under Section 101.106 and (2) if so, whether Tanner timely served Scott. *See id.* at 303-04 & n.2. To answer the question presented to us on remand, we must construe the relevant portions of Section 101.106, the election-of-remedies provision in the Texas Tort Claims Act. Accordingly, we provide a brief overview of the statutory framework.

**Statutory Framework**

"Sovereign immunity and its counterpart, governmental immunity, exist to protect the State and its political subdivisions from lawsuits and liability for money damages." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008). "[T]he manner in which the government conveys its consent to suit is through the Constitution and state laws." *Id.* at 660.

5

Thus, "it is the Legislature's sole province to waive or abrogate sovereign immunity." *Id.* (quoting *Texas Nat. Res. Conservation Comm'n v. IT-Davy,* 74 S.W.3d 849, 853 (Tex. 2002)). We narrowly construe statutory waivers of immunity because "the Legislature's intent to waive immunity must be clear and unambiguous." *Id.* at 655 (citing Tex. Gov't Code § 311.034).

The Texas Tort Claims Act provides a limited waiver of immunity for certain tort claims against governmental entities and caps recoverable damages. *See, e.g.*, Tex. Civ. Prac. & Rem. Code §§ 101.021, .023, .025; *see also Garcia*, 253 S.W.3d at 655-56. To prevent plaintiffs from circumventing the Act's damages cap and other restrictions by suing governmental employees, the Legislature enacted an election-of-remedies provision. *Garcia*, 253 S.W.3d at 656. The Legislature has structured that provision "to prevent a plaintiff from pursuing alternative theories against both the employee and the governmental unit through trial or other final resolution." *Id.*

The election-of-remedies section provides as follows:

(a) The filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter.

(b) The filing of a suit against any employee of a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against the governmental unit regarding the same subject matter unless the governmental unit consents.

(c) The settlement of a claim arising under this chapter shall immediately and forever bar the claimant from any suit against or recovery from any employee of the same governmental unit regarding the same subject matter.

(d) A judgment against an employee of a governmental unit shall immediately and forever bar the party obtaining the judgment from any suit against or recovery from the governmental unit.

6

(e) If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit.

(f) If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

Tex. Civ. Prac. & Rem. Code § 101.106.

**Standard of Review**

"Sovereign immunity implicates a court's subject-matter jurisdiction." *EBS Sols., Inc. v. Hegar*, 601 S.W.3d 744, 749 (Tex. 2020). Because subject-matter jurisdiction is a question of law, we review a trial court's ruling on a plea to the jurisdiction de novo. *Id.* Here, the jurisdictional issue involves statutory construction, a question of law that we review de novo. *First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 631 (Tex. 2008). When construing a statute, "our goal is to ascertain the Legislature's intent." *Texas Adjutant Gen.'s Office v. Ngakoue*, 408 S.W.3d 350, 354-55 (Tex. 2013).

To ascertain that intent, we begin with the plain language of the statute. *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). We must view the statute as a whole. *Id.* "We must endeavor to read the statute contextually, giving effect to every word, clause, and sentence." *Ngakoue*, 408 S.W.3d at 354 (quoting *In re Office of Attorney Gen.*, 422 S.W.3d 623, 629 (Tex. 2013) (orig. proceeding)). We may consider the "object sought to be obtained" by the statute and the "consequences of a particular construction." *Id.* (quoting Tex. Gov't Code § 311.023(1), (5)).

7

**I.**     **The Legislature intended the Act's election-of-remedies provision to force an early decision by the plaintiff about who to sue, as well as the trial court's dismissal of governmental employees when suit should have been brought against the government.**

To properly construe Section 101.106 in determining whether Tanner's service on Scott was effectively service on the University and to consider the statute as a whole, we must examine the policy underlying the election-of-remedies provision. As the Texas Supreme Court has observed, with the 2003 revision of Section 101.106, the Legislature intended to "force a plaintiff to decide at the outset whether an employee acted independently and is thus solely liable, or acted within the general scope of his or her employment such that the governmental unit is vicariously liable" to reduce "the resources that the government and its employees must use in defending redundant litigation and alternative theories of recovery." *Garcia*, 253 S.W.3d at 657 & n.3 (noting that state agencies must "indemnify their employees for litigation expenses if the employee's actions were within the course and scope of his or her employment" and citing Tex. Civ. Prac. & Rem. Code §§ 104.001, .002). Section 101.106 "favors the expedient dismissal of governmental employees when suit should have been brought against the government." *Ngakoue*, 408 S.W.3d at 355. "An early determination of who constitutes the proper defendant 'narrows the issues for trial and reduces delay and duplicative litigation costs' by removing a plaintiff's ability 'to plead alternatively that the governmental unit is liable because its employee acted within the scope of his or her authority but, if not, that the employee acted independently and is individually liable.'" *Id.* (quoting *Garcia*, 253 S.W.3d at 657). Thus, when the suit arises from an employee's conduct that was within the scope of employment and could be brought against the government under the Tort Claims Act, we must favor construing the meaning of Section 101.106's various

8

provisions in the way "that most clearly leads to the early dismissal of a suit against an employee."[3] *Id.*

In *Ngakoue*, the Texas Supreme Court explained the interaction of Subsections (b) and (e) and Subsections (b) and (f). *Id.* Both Subsection (e) and (f) offer the possibility for early dismissal of a suit against an employee, but in different situations. Subsection (f) applies when "suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit." Tex. Civ. Prac. & Rem. Code § 101.106(f). In that situation, "the suit is considered to be against the employee in the employee's official capacity only." *Id.*

Courts have long held that a suit against a government employee is merely 'another way of pleading an action against an entity of which [the employee] is an agent.'" *Texas A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 844 (Tex. 2007) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Thus, "[a] suit against a state official in his official capacity 'is *not* a suit against the official personally, for the real party in interest is the entity.'" *Id.* (quoting *Graham*, 473 U.S. at 166). "*As long as the government entity receives notice and an opportunity to respond*, an official-capacity suit is, *in all respects other than name*, to be treated as a suit against the entity." *Graham*, 473 U.S. at 166 (emphases added) (explaining distinction between personal-capacity and official-capacity suits against governmental employees in holding that attorneys' fees could not be recovered from governmental entity when suit was against governmental employees in their personal capacities).

---

[3] "[A]ll tort theories alleged against a governmental unit, whether it is sued alone or together with its employees, are assumed to be 'under [the Tort Claims Act]' for purposes of section 101.106." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008).

9

Accordingly, Subsection (f) provides a procedure by which the governmental employee who is deemed to have been sued only in his official capacity will be dismissed from the suit. Upon filing of a motion to dismiss, the employee will be dismissed either "(1) via the plaintiff's amended pleading substituting the governmental unit for the employee as the defendant; or (2) absent such an amended pleading, via the trial court's order granting the employee's motion and dismissing the suit against the employee." *Ngakoue*, 408 S.W.3d at 358. Because the "suit against an employee in his official capacity is *not* a suit against the employee" in his individual capacity—instead, it is in all but name a suit against the governmental unit—it does not trigger Subsection (b)'s bar against suing a governmental unit after a plaintiff has filed suit against an employee of the unit. *Id.* at 357. Thus, Subsection (f) allows the plaintiff's suit to proceed against the governmental unit *if* the governmental unit is properly substituted for the employee as the defendant; this "procedure for dismissal [of the employee] independently serves section 101.106's recognized purposes of ensuring early dismissal of governmental employees when suit should have been brought against the government and reducing the expense and delay associated with alternative pleading." *Id.* at 358. The supreme court summarized the interaction of Subsections (f) and (b) as follows:

> In sum, subsection (f) does not require dismissal of the employee by the plaintiff to overcome the bar to suit against the government in subsection (b); rather, subsection (f) provides the [Texas Tort Claims Act] plaintiff a window to amend his pleadings to substitute the governmental unit before the court dismisses the suit against the employee on the employee's motion where appropriate. Tex. Civ. Prac. & Rem. Code § 101.106(f). *If the plaintiff fails to substitute the government*, and the employee was sued in his official capacity only, *then the case must be dismissed*.

*Id.* at 359 (emphases added).

10

"The same purposes [of ensuring early dismissal of governmental employees when suit should have been brought against the government and reducing the expense and delay associated with alternative pleading] are served by subsection (e), which applies when suit is filed against both a governmental unit under the [Texas Tort Claims Act] and its employee." *Id.* at 358. Subsection (e)—the applicable provision in Tanner's case—establishes that "the employee shall immediately be dismissed on the filing of a motion by the governmental unit." Tex. Civ. Prac. & Rem. Code § 101.106(e). As we noted earlier, "[b]y filing such a motion, the governmental unit effectively confirms the employee was acting within the scope of employment and that the government, not the employee, is the proper party." *Ngakoue*, 408 S.W.3d at 358. "Further, subsection (e) does not provide for dismissal of the governmental unit, so when the employee is dismissed under that provision, the suit then proceeds solely against the government, *assuming immunity is otherwise waived*." *Id.* (emphasis added); *see also Garcia*, 253 S.W.3d at 659 (concluding that when tort claims were asserted against both employee and governmental employer, suit was brought under Tort Claims Act, but Act did not waive immunity for type of tort claims asserted, meaning employee would have been entitled to dismissal on governmental employer's motion and claims brought under Act against employer would not survive); *Tanner II*, 689 S.W.3d at 296 (holding that "bringing suit" within limitations requires timely service and is statutory prerequisite to suing governmental entity that is jurisdictional and thus required for waiver of immunity).

II. **Tanner misreads Subsection (f) and the analysis in *Bailey* in arguing that service on Scott was effectively service on the University.**

With this procedural understanding of Section 101.106 in mind, we turn to Tanner's argument that her allegedly timely service on Scott satisfies the statutory prerequisite of timely

service on the University, and thus, she has satisfied the jurisdictional prerequisite of "bringing suit" against the University within the statute of limitations. *See Tanner II*, 689 S.W.3d at 300. Tanner relies on Subsection (f) and the Texas Supreme Court's holding in *University of Tex. Health Sci. Ctr. at San Antonio v. Bailey*, 332 S.W.3d 395 (Tex. 2011), to support this argument. In *Bailey*, the Texas Supreme Court held that a governmental employer may be substituted as a defendant upon its employee's Subsection (f) motion after limitations has run. 332 S.W.3d at 396; *see also Ngakoue*, 408 S.W.3d at 357 (describing *Bailey*'s holding). The court determined that the employer could not prevail on its defense of limitations because when the employer was substituted as the defendant in the employee's place, "there was no change in the real party in interest" because "[u]nder section 101.106(f), the Baileys' suit against [the employee] was, *in all respects other than name*, a suit against the [employer]." *Id.* at 401-02 (emphasis added). As the court described it in *Tanner II*, "[u]nder the Act, the Baileys' suit had been a suit against the employer *all along*." 689 S.W.3d at 303.

Tanner contends that we should extend the court's reasoning in *Bailey* to this case. She asserts that because Subsection (f) gives the plaintiff permission to "file[] amended pleadings dismissing the employee and naming the governmental unit as defendant" within 30 days of the motion, and the court allowed such a substitution after limitations had run, we should similarly conclude that the University "as a named party" in this suit "has also been in this case 'all along.'" We disagree.

Important factual and procedural differences between *Bailey* and this case result in a different outcome here. As the supreme court pointed out in *Tanner II*, "unlike in this case, the Baileys did not know that the individual defendant that they had sued, Sanders, was a government employee." *Id.* (citing 332 S.W.3d at 401). In contrast, here "Tanner named the University from

the beginning and so had no need to later name a correct party, as § 101.106(f) provides and as the Baileys did." *Id.* In *Bailey*, the employee defendant "Sanders waited until seven weeks after limitations had passed and then announced that his employer (another state university) should have been the defendant the whole time." *Id.* (citing 332 S.W.3d at 397). The employer then invoked limitations. *Id.* (citing 332 S.W.3d at 399). Tanner, on the other hand, "*could* have served every defendant at the time of filing but, purportedly for strategic reasons, chose *not* to do so." *Id.*

As we explained above, Subsection (f) and Subsection (e) operate differently even though they serve the same goals of ensuring early dismissal of governmental employees when suit should have been brought against the government and reducing the expense and delay associated with alternative pleading. In *Bailey*, because only the employee had been named in the suit as a defendant, Subsection (f) was the operative provision. *See* Tex. Civ. Prac. & Rem. Code § 101.106(f). Therefore, the employee controlled the timing of the motion to dismiss, which put the Baileys on notice that he was an employee of a governmental unit and that their suit could be brought against the governmental unit, and required the Baileys to either amend their pleadings to substitute the governmental unit for the employee as the defendant, which they did, or face dismissal of their suit against the employee. *See id.*

Here, Tanner filed suit against both a governmental unit and its employee, triggering the application of Subsection (e). Subsection (e) places control of the employee's dismissal from the suit in the governmental unit's hands: "the employee shall immediately be dismissed on the filing of a motion by the governmental unit." *Id.* § 101.106(e). When a Subsection (e) motion is filed, "the governmental unit effectively confirms the employee was acting within the scope of employment and that the government, not the employee, is the proper party." *Ngakoue*, 408 S.W.3d at 358. "Further, subsection (e) does not provide for dismissal of

13

the governmental unit, so when the employee is dismissed under that provision, the suit then proceeds solely against the government, *assuming immunity is otherwise waived*." *Id.* (emphasis added). In other words, if suit has *properly been brought* against the governmental unit, then after the employee is dismissed under a Subsection (e) motion, the suit *continues* against the governmental unit.

The holding in *Bailey* turned on the specific language in Subsection (f) providing that "when a government employee is sued for conduct within the general scope of employment, as Sanders was, and the employer could have been sued under the Act—in tort, that is—instead, 'the suit is considered to be against the employee in the employee's official capacity only.'" 332 S.W.3d at 401 (footnote and citation omitted). Thus, even though the Baileys may have intended to sue Sanders in his individual capacity, Subsection (f) does not allow that choice:

> Under the statute, it matters not that the Baileys may not have been aware of Sanders' government employment when they sued him; only the fact of his employment, eventually established, is important. **Substitution of the Center as the defendant was not automatic**; Sanders was required to file a motion. But the statute does not require a motion for a government employee to be considered to have been sued in his official capacity.

*Id.* (emphasis added). The court concluded that because Subsection (f) "requir[es] a government employer to be substituted on the employee's motion," the Center could not prevail on its defense of limitations.[4] *Id.* at 402.

---

[4] We note that even under Subsection (f), timely service of the amended suit upon the governmental employer would be required in order to trigger the employer's deadline to answer the suit. *See University of Tex. Health Sci. Ctr. at San Antonio v. Bailey*, 332 S.W.3d 395, 398 & n.10 (Tex. 2011) (noting that trial court gave deadline to Baileys to amend pleadings, and after employer answered suit, trial court issued order dismissing employee and severed him from case).

Subsection (e) contains no language requiring substitution of one party for another because none is needed. The employer controls the filing of the motion to dismiss, and contrary to Tanner's argument, the University had no obligation to do so even as a named party until served and brought into the suit.[5] *See Tanner II*, 689 S.W.3d at 304 ("[T]he University had no duty to act at all" until it had been served.). Subsection (e) contemplates a case where both the governmental employer and the employee sued in his official capacity are already named parties to the suit, who have been served and are participating in the litigation.

The court in *Bailey* construed Subsection (f) to allow substitution of a governmental employer for an employee sued in his official capacity after the statute of limitations had expired based on the specific statutory language in Subsection (f), which gives control of the timing of the motion to dismiss to the employee. 332 S.W.3d at 401-02. In this case governed by Subsection (e), which gives control of the timing of the motion to dismiss to the employer (and thus contemplates the employer's having been served), we decline to extend *Bailey*'s holding to allow service on an employee sued in his official capacity to constitute effective service on his governmental employer. In addition to the lack of statutory support for this extension of *Bailey*'s holding, we observe that such a holding would result in practical problems with scheduling in the trial court because in theory a plaintiff would never need to serve the employer as long as they timely served the employee. Therefore, we hold that Tanner's service on Scott did not constitute effective service on the University.

---

[5] Similarly, Tanner argues that the University's attorneys, who also represented Scott, "have been directing the strategy of the litigation from the inception," and thus, the University "should not be allowed to use its alleged 'absence' from the case as the basis for a statute of limitations defense." As the supreme court noted in *Tanner II*, "common representation alone does not impose any duty on an unserved party." 689 S.W.3d at 304.

Having concluded that Tanner's service on Scott does not constitute effective service on the University, we need not reach the issue of whether Tanner's service on Scott was timely. *See* Tex. R. App. P. 47.1.

## CONCLUSION

Having held that Tanner's service on Scott did not constitute service on the University, and thus, the University was not timely served, we affirm the trial court's grant of the University's plea to the jurisdiction.

_____

Gisela D. Triana, Justice

Before Justices Triana, Theofanis, and Crump
  Dissenting Opinion by Justice Crump

Affirmed

Filed:   June 11, 2025

16